## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| (1) ALPHA CAPITAL ANSTALT, a Liechtenstein corporation, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. _____ |
| (1) NESS ENERGY INTERNATIONAL, INC., a Washington corporation; (2) OKT RESOURCES, LLC, an Oklahoma limited liability company; (3) VICEROY, LLC, an Oklahoma limited liability company; and (4) DAVID BOYCE, an individual, | ) ) ) ) ) ) ) | |
| Defendants. | ) | |

## <u>COMPLAINT</u>

Plaintiff Alpha Capital Anstalt, for its claims against Defendants Ness Energy International, Inc.; OKT Resources, LLC; Viceroy, LLC; and David Boyce, alleges and states as follows:

## PARTIES

1.  Plaintiff Alpha Capital Anstalt  ("Alpha Capital") is a Liechtenstein corporation with its principal place of business in Balzers, Liechtenstein.

2.  Ness Energy International Inc. ("Ness Energy") is, upon information and belief, a Washington corporation with its principal place of business in Edmond, Oklahoma.

3.  Defendant OKT Resources LLC ("OKT") is, upon information and belief, an Oklahoma limited liability company with its principal place of business in Edmond,

Oklahoma.

4.   Defendant Viceroy, LLC ("Viceroy") is, upon information and belief, an Oklahoma limited liability company with its principal place of business in Edmond, Oklahoma.

5.   Defendant David Boyce ("Boyce"), upon information and belief, is a citizen of Oklahoma and resides in Edmond, Oklahoma.   Defendants Ness Energy, OKT, and Viceroy, upon information and belief, are owned by, affiliated with, or otherwise controlled by David Boyce.

## JURISDICTION AND VENUE

6.   This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(2), in that the action is between citizens of a state and citizens of a foreign state and the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

7.   Venue is proper in the Western District of Oklahoma pursuant to 28 U.S.C. § 1391(a)(2), in that it is a judicial district in which a substantial part of the events or omissions giving rise to the claims occurred, or a substantial part of the property which is the subject of the action is situated.   In addition, venue is proper pursuant to 28 U.S.C. § 1391(a)(1), in that it is a judicial district where a Defendant resides and all Defendants reside in this State under 28 U.S.C. § 1391(c).

2

## FACTS COMMON TO ALL CLAIMS

8.   On May 29, 2008, Judge Alvin K. Hellerstein of the United States District Court for the Southern District of New York entered an Order in Case No. 07 Civ. 9242(AKH) requiring Ness Energy to transfer to Alpha Capital within two weeks stock certificates (the "Stock") representing all of Ness Energy's ownership interest in Ness Energy of  Israel, Inc. ("Ness Israel").  (Court Order, attached Exhibit 1.)  That Court Order states, in relevant part:

> IT IS HEREBY ORDERED that the defendant, NESS ENERGY INTERNATIONAL, INC. and its officers, directors, agents, employees, attorneys and all those in active concert with it are hereby directed to deliver to the Plaintiff's attorneys Grushko & Mittman, P.C. at 551 Fifth Avenue, Suite 1601, New York New York 10176, within two weeks of receipt of this order, the stock certificates representing the defendant's entire ownership interests of Ness Energy of Israel, Inc.

9.   The Court Order was entered in aid of enforcement of a judgment which was entered in the United States District Court for the Southern District of New York on January 18, 2008, against Ness Energy and in favor of Alpha Capital in the amount of $543,035.30 (the "Judgment") (attached Exhibit 2).

10.   The Court Order was entered in response to Alpha Capital's motion, duly served upon Ness Energy, seeking the turnover of the Stock in partial satisfaction of the Judgment.  The remainder of the Judgment has not otherwise been paid.

11.   Ness Energy did not comply with the Court Order requiring it to transfer the

Stock, claiming that it could not find the certificates representing the Stock.   Alan Stricklin ("Stricklin"), who was then Chief Executive Officer of Ness Energy, therefore, on or about August 19, 2008, to comply with the Court Order, executed an Affirmation of Loss on behalf of Ness Energy (attached Exhibit 3) wherein he: i) acknowledged the Court Order requiring Ness Energy to deliver the Shares to Alpha Capital; ii) acknowledged that Ness Energy was the 100% owner of Ness Israel; iii) transferred Ness Energy's full interest in Ness Israel, including the right to vote the Shares, to Alpha Capital; and iv) agreed that Ness Energy would immediately deliver the certificates representing the Shares to Alpha Capital, if and when such certificates were found.   In the Affirmation of Loss, Stricklin stated:

> 1.   I am the Chief Executive Officer of Ness Energy International, Inc. ("Ness") and I am making this affirmation in response to the Court's order dated May 29, 2008, requiring Ness to deliver to Grushko & Mittman, P.C. [Alpha Capital's attorneys] the stock certificates representing Ness' 100% ownership interest in its subsidiary, Ness Energy of Israel, Inc. ("Ness Israel"), a Texas corporation (the "Stock Certificates").

> 2.   I diligently searched the records and files of Ness [Energy International, Inc.] and have been unable to locate the Stock Certificates.   In the event Ness finds such Stock Certificates, Ness will immediately deliver them to Alpha Capital Anstalt.

> 3.   Ness represents that it is the owner of the Stock Certificates representing 100% of the ownership interest in Ness Israel.   Ness hereby transfers to Alpha Capital Anstalt said Stock Certificates and all of Ness' right, title and interest in Ness Israel, including, but not limited to, the right to vote

said shares.

12.  Ness Israel, at the time Ness Energy transferred the Stock to Alpha Capital, was worth less than the Judgment. Alpha Capital, however, was unable to find any viable assets, other than the Stock, to satisfy the Judgment.

13.  Ness Israel's assets, at that time, upon information and belief, were a 100% ownership of an Israeli company, Noya Oil & Gas Exploration, Ltd. ("Noya"), which in turn owned 75% of Modiin Energy Management (1992) Ltd. ("Modiin Management"), the general partner of Modiin Energy Limited Partnership ("Modiin"), an Israeli limited partnership.  Noya also owned 99% of Modiin Energy Trustees, Ltd., the limited partner of Modiin.  Noya is involved in the business of exploration for oil and gas.

14.   Upon inquiry, Alpha Capital learned that Noya required a substantial additional capital investment in order to maintain its business.  Alpha Capital, therefore, considered what to do with the Stock and decided simply to retain ownership of Ness Israel, in partial satisfaction of the Judgment.

15.  At the end of 2008, Alpha Capital had conversations with Boyce, who was then general manager of OKT.  Boyce had contacted Alpha Capital to discuss restoring Ness Energy (which thereafter filed for bankruptcy at the end of 2008) as a viable company.  Boyce was suggesting, among other things, that Alpha Capital restructure Ness Energy's debt, which would allow OKT to manage Ness Energy's business.  During the course of the conversations, Boyce stated to Alpha Capital that OKT had purchased

Ness Israel from Ness Energy.  Alpha Capital told Boyce that it owned Ness Israel because of Ness Energy's transfer of the Stock and the ownership interest to Alpha Capital, in accordance with the Court Order.

16.  Boyce acknowledged in writing to a representative of Alpha Capital that in the course of OKT's due diligence, he reviewed the public filings and the lawsuits filed by Alpha Capital and that Stricklin had no authority to sell the Stock to OKT.  Indeed, in recognition of Alpha Capital's ownership of the Stock, Boyce, in the spring of 2009, delivered to Alpha Capital what he stated were all of the books and records of Ness Israel in his possession.

17.  Nothing came of the discussions with Boyce and OKT.  Alpha Capital simply continued to hold its 100% ownership interest in Ness Israel, which it had taken in partial satisfaction of the Judgment.

18.  In or about the first part of 2010, Alpha Capital learned that Noya, Ness Israel's wholly owned subsidiary, issued stock in itself to an Israeli company named Du-Tzach.  As a result of that transaction, Ness Israel's interest in Noya was substantially diluted to 5% and Du-Tzach owned 95%, half of which it sold to an affiliate of IDB Bank ("IDB"), one of the largest banks in Israel.  That transaction deprived Ness Israel and Alpha Capital of their control over the business of Noya.

19.  Alpha Capital was puzzled as to how Noya could sell such a substantial stake in itself without the consent of Ness Israel, which was owned by Alpha Capital.  Alpha

Capital, therefore, retained Israeli counsel to investigate the circumstances of the Noya stock issuance.  He contacted representatives of Du-Tzach and IDB.  When conversations with those representatives proved unavailing, Alpha Capital and Ness Israel brought suit in Israel (the "Israeli Action") against Noya, Du-Tzach, and IDB in the District Court for the Central District of Israel.  The suit alleges that the Noya stock was improperly issued to Du-Tzach and IDB in violation of Noya's articles of incorporation and in violation of Israeli law.  The hearing on those claims is scheduled to proceed on January 19, 2011.

20.   During the course of counsel's investigation of the sale of the stock in Noya, Alpha Capital learned that Modiin made certain filings with the Tel Aviv Stock Exchange regarding change of control of Modiin Management, Modiin's general partner.  In filings made on March 17, 2009, and August 18, 2009, Modiin stated that based upon information posted on the Ness Energy web site, OKT owns Ness Israel and thereby controls Modiin.  That information is inconsistent with the transfer of Ness Israel to Alpha Capital on August 19, 2008, and contradicts OKT's own written acknowledgment that any transfer of the Stock by Ness Energy to OKT was not proper.

21.   After Alpha Capital made inquiries, counsel for Alpha Capital received a letter on May 20, 2010, from Brently Olsson, Esq., a lawyer representing Viceroy (attached Exhibit 4).  Olsson claimed that Viceroy was the holding company for Ness Energy and that "Ownership of Ness Israel is still retained by Ness Energy" (according to Olsson).  Olsson demanded that Alpha Capital cease and desist from representing that it

owned Ness Israel.  Alpha Capital vigorously disputed Olsson's claims (attached Exhibit 5).

22.    Olsson's claims on behalf of Viceroy are contradicted by documents submitted by Viceroy to IDB in July 2010 in which Viceroy claimed ownership of the Stock.  Thus in a letter (attached Exhibit 6) from Noya's counsel on July 18, 2010, counsel stated that Viceroy, and not Alpha Capital, appeared to be the owner of the Stock:

> Attorney Mayers forwarded to us, *inter alia*, a copy of Ness Israel's stock certificate, which *prima facie* indicates that Ness Israel's stock were [sic] not held at all by Ness Energy International Inc. ("Ness International"), as alleged in the documents delivered to us by you, but were rather held by a person called Sha Stevens, who transferred ownership in the stock to Attorney Mayers's client, Viceroy LLC ("Viceroy"). The documents delivered to us by Attorney Mayers therefore show, *prima facie*, that the claim made in Mr Alan Stricklin's affirmation, a copy of which was delivered to us by you, is incorrect.

In connection with Alpha Capital's claims against Du-Tzach and IDB, Noya's counsel informed Alpha Capital that it was unwilling to resolve the matter with Alpha Capital because Viceroy claimed ownership of Ness Israel.  Any resolution with Alpha Capital, therefore, would leave IDB and Du-Tzach, according to counsel, open to claims from Viceroy as the purported true owner of Ness Israel.

23.  In support of Viceroy's claimed ownership of Ness Israel, IDB's attorneys forwarded to Alpha Capital a stock certificate for 1,000 shares of Ness Israel dated

September 2, 2003, showing on its face that the shares were registered to Sha Stephens (Ness Energy's Chief Executive Officer in 2006 when Alpha Capital made the loan which was the subject of the Judgment), not Ness Energy, and a stock power whereby Mr. Stephens purported to transfer that certificate to Viceroy on May 27, 2010. (Attached Exhibits 7 and 8.)   Those documents, Alpha Capital was informed, were obtained by IDB from Viceroy.  The documents Viceroy delivered to IDB contradict on their face the claims Viceroy made in the Olsson letter that Ness Energy retained ownership of Ness Israel and that, therefore, Alpha Capital had no interest in Ness Israel.

24.   The stock certificate and the stock power transferring the stock certificate to Viceroy are of questionable validity, at best.  Sha Stevens, when he was Ness Energy's Chief Executive Officer, signed many public filings in which Ness Israel was set forth as a subsidiary of Ness Energy, not as owned by Sha Stevens.  Ness Israel also, in Public Information Reports filed with the State of Texas, identified Ness Energy as the 100% owner of Ness Israel, not Sha Stevens.  In February 2008, Sha Stevens himself signed a corporate resolution in which he acknowledged Ness Energy as the sole owner of all of Ness Israel (attached Exhibit 9).

25.   Sha Stevens, Boyce, and the other Defendants knew, based upon these public filings, that Ness Energy, and not Sha Stevens, was the owner of Ness Israel, and, therefore, that Sha Stevens had no ability to transfer ownership of Ness Israel to Viceroy. Defendants utilized the stock certificate and stock power improperly with the purpose of

attempting to deny Alpha Capital standing in the Israeli Action based upon those documents, which they knew were invalid, and attempting to extort funds from Alpha Capital and/or Du-Tzach and IDB to resolve their claims.

26.   Defendants have improperly created a controversy about the ownership of Ness Israel, although ownership was clearly and unequivocally transferred to Alpha Capital in the assignment signed by Stricklin, as CEO of Ness Energy, in August 2008 in compliance with the Court Order.  OKT claims that it purchased the Shares of Ness Israel from Ness Energy (although subsequently admitting that Ness Energy could not sell the Stock to it).  Viceroy claims, inconsistently and in contradiction to OKT's claims, either that Ness Energy still retains ownership of Ness Israel, in violation of the Court Order requiring Ness Energy to deliver the Shares to Alpha Capital, or that Viceroy received the Stock in a direct transfer from Sha Stephens, the purported owner of the Shares, in July 2010.

27.   Upon information and belief, Boyce wrongfully caused Ness Energy, OKT, and Viceroy to make their various improper and inconsistent claims regarding ownership of the Stock in order to prevent Alpha Capital from retaining its ownership interest in Ness Israel and exercising its rights with respect to the management and development activities to be pursued by Ness Israel's subsidiary, Noya, and in an attempt to extort funds from Alpha Capital and/or Du-Tzach and IDB in Israel.

### First Cause of Action
### Preliminary and Permanent Declaratory Judgment
### as to Defendants Ness Energy, OKT, and Viceroy

28.   Alpha Capital realleges and incorporates by reference Paragraphs 1 through 27 of this Complaint.

29.   Alpha Capital brings this claim for declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202 and Fed. R. Civ. P. 57.   A dispute has arisen between Alpha Capital on the one hand, and Ness Energy, OKT, and Viceroy, on the other hand, over the ownership of Ness Israel.   Such a dispute constitutes a justiciable controversy between the parties.

30.   For the reasons stated above, Alpha Capital requests the Court to enter judgment declaring preliminarily and permanently that: Ness Energy duly transferred all of the Stock of, and its ownership interest in, Ness Israel to Alpha Capital on August 19, 2008; and that Alpha Capital is the owner of all of the stock of Ness Israel.

### Second Cause of Action
### Preliminary and Permanent Injunctive Relief
### as to Defendants Ness Energy, OKT, and Viceroy

31.   Alpha Capital realleges and incorporates by reference Paragraphs 1 through 30 of this Complaint.

32.   Alpha Capital seeks a preliminary injunction pursuant to Fed. R. Civ. P. 65, and after trial, a permanent injunction order, enjoining Defendants and all those in active concert with them, from holding out Ness Energy, OKT, or Viceroy as the owner of Ness

11

Israel.

33.   Alpha Capital will suffer irreparable harm absent the preliminary injunction. While Alpha Capital is confident of the merits of its claims in the Israeli Action, representatives of the adverse parties in the Israeli Action already have stated that Alpha Capital's standing in the Israeli Action will be challenged on the grounds that Alpha Capital is not the owner of the Stock.  Alpha Capital will be unable in the Israeli Action to obtain discovery from and questioning of Defendants in the instant action to refute this improper challenge, because Defendants are not subject to Israeli jurisdiction. Accordingly, preliminary injunctive relief from this Court is necessary as to determination of Alpha Capital's ownership interest, which if determined in the Israeli Action will be based upon incomplete documents and false statements as to ownership of Ness Israel.  Preliminary injunctive relief additionally is warranted because even if this Court ultimately awards damages to Alpha Capital based upon an improper transfer of the ownership of Ness Israel, Ness Energy has no assets from which Alpha Capital can collect such a judgment.

34.   Alpha Capital will also suffer irreparable harm because it will be deprived of its right to manage and control Ness Israel and its subsidiaries during the pendency of this action and thereafter.  Alpha Capital will suffer substantial damages resulting from its failure to retain control over Ness Israel and its subsidiaries.

35.   As set forth above, there is a substantial likelihood that Alpha Capital will

prevail on the merits in this action and that the Court will determine that Alpha Capital is the owner of all of the stock of Ness Israel.

36.   The harms faced by Alpha Capital and set forth above far outweigh any that would be sustained by Defendants if the preliminary injunction were granted.  At most, Defendants would be prevented, during the pendency of this lawsuit, from holding themselves out as the owners of a company whose ownership has been obviously and substantially disputed for a significant length of time.

37.   The requested injunction will not be adverse to, and indeed will serve, the public interest.  The public interest is served by preserving the status quo, preventing further improper acts from being taken in regards to Ness Israel, and ensuring that ownership of Ness Israel is determined properly, in accordance with the Court Order.

### Third Cause of Action
**Intentional Interference with Contract/Business Relationships
as to All Defendants**

38.   Alpha Capital realleges and incorporates by reference Paragraphs 1 through 37 of this Complaint.

39.   Alpha Capital, as the owner of the Stock of Ness Israel, has contract rights to control Ness Israel and its subsidiary Noya.

40.   Defendants knew about Alpha Capital's contract rights as the sole shareholder of Ness Israel to control Ness Israel and its subsidiary, Noya.

41.   Defendants interfered with Alpha Capital's contract rights by wrongfully

asserting, inconsistently, that either Ness Energy, OKT, or Viceroy is the owner of Ness Israel and asserting that ownership claim in an attempt to defeat Alpha Capital's standing in the Israeli Action.

42.   Defendants' interference was intentional, improper, and without privilege.

43.   Defendants utilized improper means to interfere with Alpha Capital's contract rights when Defendants presented a stock certificate and stock power, which they knew were of questionable validity, at best, to Defendants in the Israeli Action in order to defeat Alpha Capital's standing therein and to enable Defendants to attempt to extort money from Alpha Capital and/or Du-Tzach and IDB to settle the improper claims.

44.   As a result of Defendants' tortious and wrongful actions, Alpha Capital has suffered damages, as well as immediate and irreparable harm to its business and its business relationships.

**Fourth Cause of Action**
**Civil Conspiracy**
**as to All Defendants**

45.   Alpha Capital realleges and incorporates by reference Paragraphs 1 through 44 of this Complaint.

46.   Defendants improperly conspired between and among themselves, and continue to do so, in an unlawful attempt to deprive Alpha Capital of its ownership of Ness Israel, and Defendants utilized improper means to bring about that result.

47.   Defendants knew that Ness Energy transferred ownership of Ness Israel to

14

Alpha Capital in August 2008 in order to comply with a court order requiring Ness Energy to do so.

48.   Defendants knew that Ness Energy owned all of Ness Israel just prior to the transfer of the Stock and duly transferred that Stock to Alpha Capital.

49.   Notwithstanding such knowledge, Defendants asserted contradictory and inconsistent claims that Ness Energy, OKT, and Viceroy each own all of Ness Israel in an attempt to deprive Alpha Capital of standing in the Israeli Action and to extort a payment from Alpha Capital and/or Du-Tzach and IDB to settle their claims.

50.   Defendants used improper means in furtherance of their conspiracy when, notwithstanding the fact that Sha Stevens signed public and other documents acknowledging Ness Energy's ownership of Ness Israel, he purported to transfer ownership of Ness Israel to Viceroy, and Viceroy with full knowledge of the facts accepted such transfer, based upon improper documents in which Sha Stevens claimed, contrary to his prior admissions, that he was individually the owner of Ness Israel.

51.   Defendants continue to attempt to derail Alpha Capital's standing in the Israeli Action and to extort payments from Alpha Capital.  As recently as November 8, 2010, Calev Myers, an Israeli attorney who, upon information and belief, represents some or all Defendants, wrote to Alpha Capital's Israeli counsel and stated that if Alpha Capital did not make a sufficient offer, Mr. Myers would contact the defendants in the Israeli Action "to see what they are offering for us to join their side."  (Attached Exhibit 10.)

15

52.   As a result of Defendants' tortious and wrongful actions, Alpha Capital has suffered damages, as well as immediate and irreparable harm to its business and its business relationships.

## RELIEF SOUGHT

WHEREFORE, Plaintiff Alpha Capital demands that Defendants be cited to appear and answer herein as required by law, and that this Court enter judgment in Plaintiff's favor and against Defendants as follows:

(a) A declaratory judgment that Ness Energy duly transferred all of the Stock of, and its ownership interest in, Ness Israel to Alpha Capital on August 19, 2008; and that Alpha Capital is the owner of all of the stock of Ness Israel;

(b) A preliminary injunction and a permanent injunction enjoining and restraining Ness Energy, OKT, and Viceroy, and all those in active concert with them, from holding out Ness Energy, OKT, or Viceroy as the owner of Ness Israel;

(c) Actual damages in excess of $75,000, exclusive of interest and costs;

(d) Punitive and exemplary damages;

(e) An award of Alpha Capital's costs incurred in the prosecution of this action, including attorney's fees and interest; and

(f) Such other general and equitable relief as this Court deems fit and proper.

Dated: November 12, 2010.

**ATTORNEY'S LIEN CLAIMED.**

s/Richard C. Ford
Richard C. Ford, OBA # 3028
Rustin J. Strubhar, OBA #15850
Elizabeth J. Barnett, OBA #21102
CROWE & DUNLEVY, P.C.
20 North Broadway, Suite 1800
Oklahoma City, OK  73102-8273
(405) 235-7700  (Phone)
(405) 239-6651 (Facsimile)
richard.ford@crowedunlevy.com
rustin.strubhar@crowedunlevy.com
elizabeth.barnett@crowedunlevy.com

**ATTORNEYS FOR PLAINTIFF
ALPHA CAPITAL ANSTALT**