**IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| ALPHA CAPITAL ANSTALT, a | ) | |
|   Liechtenstein corporation, | ) | |
| | ) | |
|       Plaintiff, | ) | |
| | ) | |
| v. | ) | NO. CIV-10-1218-D |
| | ) | |
| NESS ENERGY INTERNATIONAL, INC., a | ) | |
|   Washington corporation,  et al., | ) | |
| | ) | |
|       Defendants. | ) | |

**FINDINGS OF FACT, CONCLUSIONS OF LAW,
AND ORDER**

Before the Court is the Motion [Doc. No. 13] of Plaintiff Alpha Capital Anstalt ("Alpha Capital") for Preliminary Injunctive and Declaratory Relief.  Defendants filed a response and, pursuant to the Court's December 17, 2010 Order [Doc. No. 36], the parties were authorized to conduct limited expedited discovery regarding the request for preliminary injunctive relief and to submit supplemental briefs following the completion of that discovery.

On January 20 and 21, 2011, the Court conducted a hearing on the motion.  At the close of the hearing, the Court advised the parties that, if they wished to supplement their closing arguments, they could do so in written form to be filed no later than 9:00 a.m. on Monday, January 24, 2011. The parties timely submitted written arguments.  Having considered the evidence and the arguments of counsel, the Court finds as follows.

Background:

In this action, Alpha Capital seeks a declaratory judgment[1] that it is the owner of 100 percent

---

[1]Alpha Capital also asserts claims of intentional interference with its contractual or business relationships and a civil conspiracy by defendants to deprive Alpha Capital of its ownership of Ness Israel.  Because Alpha Capital's request for injunctive relief is not based on these causes of action, they are not addressed herein.

of the stock of Ness Energy of Israel, Inc. ("Ness Israel").  It alleges the stock was acquired as a result of a May 29, 2008 order of the United States District Court for the Southern District of New York (the "New York court") directing that Ness Energy International, Inc. ("Ness International")[2] deliver the Ness Israel stock to Alpha Capital in partial satisfaction of a January 18, 2008 judgment entered in favor of Alpha Capital and against Ness International by the New York court.  According to Alpha Capital, Ness Israel was a wholly owned subsidiary of Ness International at the time.  Alpha Capital alleges that, on August 19, 2008, Ness International's chief executive officer, Alan Stricklin, executed an "Affirmation of Loss," representing that the Ness Israel stock certificates could not be located; however, Mr. Stricklin also expressly acknowledged Alpha Capital's ownership of the stock and the attendant rights of ownership, and stated the certificates would be delivered to Alpha Capital as soon as they were found.

Alpha Capital alleges that, later in 2008 and in 2010, it learned of competing claims to the ownership of Ness Israel's stock.  In 2008, Alpha Capital was notified that Defendant OKT Resources, LLC ("OKT") claimed ownership of 100 percent of Ness Israel's stock as a result of a November 13, 2008 sale by Ness International.  Alpha Capital alleges that it notified OKT's general manager, Defendant David Boyce, of its ownership of Ness Israel, and provided him with documents evidencing the New York court order and the Affirmation of Loss.  According to Alpha Capital, Mr. Boyce then acknowledged that the November 13, 2008 purported sale was unauthorized and that Ness International had previously conveyed the Ness Israel stock to Alpha Capital; Mr. Boyce later

---

[2]In the testimony and the documents submitted, the parties have referred to Ness Energy International, Inc. as Ness Energy, Ness International, or the "public company."  The Court will refer to it as Ness International in this Order.

sent the Ness Israel materials in his possession to Alpha Capital's representatives.[3]  Alpha Capital

also alleges that, in May 2010, it was notified by Defendant Viceroy, LLC ("Viceroy"), for which

Mr. Boyce also served as general manager, that Viceroy claimed ownership of 100 percent of Ness

Israel's stock as a result of a May 27, 2010 transfer to Viceroy from Shannon "Sha" Stephens.

In 2010, Alpha Capital learned that a wholly owned subsidiary of Ness Israel had caused the

transfer of 95 percent of the subsidiary's stock to another entity.  Because Ness Israel had not

authorized its subsidiary to take that action, Alpha Capital made inquiries, and it learned that

Viceroy had represented to involved persons in Israel that Viceroy owned 100 percent of the Ness

Israel stock.  Alpha Capital, on its own behalf and on behalf of Ness Israel, ultimately filed a lawsuit

in Israel challenging the validity of the subsidiary's stock transfer; the action remains pending, and

Viceroy is seeking to intervene in that action.

In their answers to the Complaint, all defendants deny that Alpha Capital is the owner of

Ness Israel's stock. They contend the August 19, 2008 transfer via the Affirmation of Loss was

invalid because Mr. Stricklin was not authorized to transfer Ness Israel's stock at that time and/or

because Alpha failed to comply with New York law regarding the transfer of stock in partial

satisfaction of its judgment.   Viceroy asserts a counterclaim alleging that it is the lawful owner of

Ness Israel, contending that Ness International did not own Ness Israel at the time of the purported

August 19, 2008 transfer to Alpha Capital.  Viceroy alleges that Sha Stephens owned all of Ness

Israel's stock at that time and that he transferred it to Viceroy in May of 2010.

The only issue now before the Court is whether Alpha Capital is entitled to a preliminary

injunction and/or preliminary declaratory relief.  Alpha Capital seeks to preliminarily enjoin the

---

[3]In his Answer, Mr. Boyce denies acknowledging the transfer to OKT was invalid or Alpha Capital's ownership; he admits he sent some Ness Israel materials to Alpha Capital's representatives.

defendants from representing that Ness International, OKT or Viceroy own the stock of Ness Israel, pending the resolution of the claims in this lawsuit. It contends that the evidence shows the factors warranting preliminary injunctive relief are present. Alpha Capital's request for preliminary declaratory relief asks the Court to determine, at this stage of the litigation, that it is the owner of Ness Israel's stock. It contends that such a remedy is proper in these circumstances.

Defendants contend that Alpha Capital's request for preliminary declaratory relief must be denied because such relief is not an authorized remedy, and that its request for a preliminary injunction must be denied because it cannot establish the elements required to warrant such relief.

Preliminary Injunction Standards:

"Preliminary injunctions are extraordinary equitable remedies designed to 'preserve the relative positions of the parties until a trial on the merits can be held.'" *Westar Energy, Inc. v. Lake*, 552 F. 3d 1215, 1224 (10th Cir. 2009) (quoting *University of Texas v. Camenisch*, 451 U. S. 390, 395 (1981)). Thus, a preliminary injunction "serves to preserve the status quo." *MacArthur v. San Juan County*, 497 F. 3d 1057, 1066 (10th Cir. 2007), (citing *Keirnan v. Utah Transit Authority*, 339 F. 3d 1217, 1220 (10th Cir. 2003)). "In issuing a preliminary injunction, a court is primarily attempting to preserve the power to render a meaningful decision on the merits." *Keirnan*, 339 F. 3d at 1220. "[B]ecause a preliminary injunction is an extraordinary remedy, the right to relief must be clear and unequivocal." *Port City Properties v. Union Pacific R. Co.*, 518 F. 3d 1186, 1190 (10th Cir. 2008).

"[T]he status quo is 'the last uncontested status between the parties which preceded the controversy until the outcome of the final hearing.'" *Schrier v. University of Colorado*, 427 F. 3d 1253, 1260 (10th Cir. 2005) (emphasis added) (quoting *Dominion Video Satellite, Inc. v. EchoStar Satellite Corp.*, 269 F. 3d 1149, 1155 (10th Cir.2001) (quoting *SCFC ILC, Inc. v. Visa USA, Inc.*,

936 F.2d 1096, 1100 n.8 (10ᵗʰ Cir. 1991), *overruled on other grounds*, *O Centro Espirita*

*Beneficiente Uniao Do Vegetal v. Ashcroft*, 389 F. 3d 973, 975 (10ᵗʰ Cir. 2004))[4].  It is also described

as the "'last peaceable uncontested status existing between the parties before the dispute

developed.'"  *Schrier*, 427 F. 3d at 1260 (emphasis added) (quoting 11A Charles Alan Wright,

Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 2948, at 136 (2d ed.1995)).

"In determining the status quo for preliminary injunctions, this court looks to the reality of the

existing status and relationship between the parties and not solely to the parties' legal rights."

*Schrier*, 427 F. 3d at 1260.

To obtain a preliminary injunction, the movant must show: 1) a substantial likelihood of

success on the merits; 2) irreparable harm to the movant if the injunction is denied; 3) the threatened

harm to the movant outweighs any harm to the opposing party if the injunction issues; and 4)

issuance of the injunction would not be adverse to the public interest. *Flood v. ClearOne*

*Communications, Inc.*, 618 F. 3d 1110, 1117 (10ᵗʰ Cir. 2010);  *Heideman v. South Salt Lake City,*

348 F. 3d 1182, 1188 (10ᵗʰ Cir. 2003); *Kikumura v. Hurley*, 242 F. 3d 950, 955 (10ᵗʰ Cir. 2001).

 Substantial Likelihood of Success on the Merits:

To demonstrate a substantial likelihood of success on the merits of its claim, a plaintiff is

required "to present 'a prima facie case showing a reasonable probability that [it] will ultimately be

entitled to the relief sought.'" *Salt Lake Tribune Pub. Co., LLC v. AT & T Corp.* 320 F. 3d 1081,

---

[4]*SCFC ILC* was overruled by *O Centro* only as to the burden on a movant seeking a mandatory or otherwise disfavored injunction.  *SCFC ILC* held that the movant in such cases must establish the factors weigh "heavily and compellingly" in his favor; *O Centro* "jettison[ed] that part of *SCFC ILC,"* rejecting that level of proof and held that the movant in such cases must "make a strong showing both with regard to the likelihood of success on the merits and with regard to the balance of harms, and may not rely on our modified likelihood-of-success-on-the-merits standard." *O Centro*, 389 F. 3d at 975-76.

1100 (10th Cir. 2003) (quoting *Autoskill v. Nat'l Educ. Support Sys.*, 994 F.2d 1476, 1487 (10th Cir.1993)).  The movant is not required to show there is an "absolute certainty" that it will prevail on the merits.  *Autoskill*, 994 F. 2d at 1487.  Nor is it required to show an "overwhelming likelihood" of success.  *Koerpel v. Heckler*, 797 F. 2d 858, 867 n. 5 (10th Cir. 1986) (citing *Atchison, Topeka, and Santa Fe. Railway Co. v. Lennen*, 640 F. 2d 255, 261 (10th Cir. 1981)).

The movant's burden of showing a likelihood of success on the merits is modified if it establishes that the factors of irreparable harm, balancing of hardships, and the public interest  tip strongly in its favor; if so, the movant may satisfy the likelihood of success on the merits factor by showing "that questions going to the merits are so serious, substantial, difficult, and doubtful as to make the issue ripe for litigation and deserving of more deliberate investigation."  *Davis v. Mineta*, 302 F. 3d 1104, 1111 (10th Cir. 2002); *Fed. Lands Legal Consortium ex rel. Robart Estate v. United States*, 195 F. 3d 1190, 1195 (10th Cir. 1999)[5].

Irreparable Harm:

The Tenth Circuit has emphasized the importance of showing irreparable harm: "In examining these factors, courts have consistently noted that 'b]ecause a showing of probable irreparable harm is the single most important prerequisite for the issuance of a preliminary injunction, the moving party must first demonstrate that such injury is likely before the other requirements for the issuance of an injunction will be considered.'" *Dominion Video Satellite, Inc. v. Echostar Satellite Corp.,*  356 F. 3d 1256, 1260 (10th Cir. 2004)(internal citations omitted).

---

[5]The modified test does not apply where the requested relief is among the "disfavored" categories of injunctions, including those which: 1) disturb the status quo; 2) are mandatory as opposed to prohibitory; or 3) afford the movant substantially all the relief he may recover at the conclusion of a full trial on the merits.  *See O Centro Espirta Beneficiente Uniao Do Vegetal v. Ashcroft*, 389 F.3d 973, 975 (10th Cir. 2004) (per curiam), *aff'd*, 546 U.S. 418 (2006).  Alpha Capital's motion does not involve any of the disfavored categories.  Therefore, the Court may use the modified test if the circumstances warrant its application.

"An irreparable harm requirement is met if a plaintiff demonstrates a significant risk that he or she will experience harm that cannot be compensated after the fact by monetary damages." *Greater Yellowstone Coalition v. Flowers*, 321 F. 3d 1250, 1258 (10th Cir. 2003). "Purely speculative harm will not suffice, but rather, '[a] plaintiff who can show a significant risk of irreparable harm has demonstrated that the harm is not speculative' and will be held to have satisfied his burden." *RoDa Drilling Co. v. Siegal*, 552 F. 3d 1203, 1210 (10th Cir. 2009) (quoting *Greater Yellowstone*, 321 F. 3d at 1258). "In determining whether a plaintiff has made the requisite showing, we further assess 'whether such harm is likely to occur before the district court rules on the merits.'" *RoDa Drilling*, 552 F. 3d at 1210 (quoting *Greater Yellowstone*, 321 F. 3d at 1258). "If 'a trial on the merits can be conducted before the injury would occur there is no need for interlocutory relief.'" *Id.* (quoting 11A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 2948.1, at 139-40 (2d ed. 1995)).

Balancing of Harm to the Parties:

When balancing the equities among the parties, the Court must consider whether the threatened injury to the movant outweighs the potential harm to the defendants if the injunction issues. *See, e.g., Kikumura v. Hurley*, 242 F. 3d 950, 955 (10th Cir. 2001).

Consideration of the Public Interest:

A party seeking a preliminary injunction is not required to show that the requested injunctive relief will serve the public interest; rather, it must show the issuance of the injunction would not be adverse to the public interest. *Heideman v. South Salt Lake City,* 348 F. 3d 1182, 1188 (10th Cir. 2003); *Kikumura v. Hurley*, 242 F. 3d 950, 955 (10th Cir. 2001).[6]

---

[6]In this case, the parties do not assert that the public interest will be affected by the requested injunction.

Application:

A.  Motion for Preliminary Injunction:

Findings of Fact:

1.      Alpha Capital is a Liechtenstein corporation with its principal place of business in Balzers, Liechtenstein.

2.      Ness International is a Washington corporation having its principal place of business in Edmond, Oklahoma.

3.      OKT Resources and Viceroy are both Oklahoma limited liability companies having their principal places of business in Edmond, Oklahoma.

4.      Mr. Boyce is a citizen of Oklahoma and resides in Edmond, Oklahoma.

5.      Mr. Boyce is currently the President and Chief Executive Officer of Ness International; he is also currently the manager and part owner of both OKT Resources and Viceroy.

6.      OKT Resources is an oil and gas exploration and production company which operates in Oklahoma and other states.

7.      Viceroy was formed by Mr. Boyce as a holding company for the purpose of attempting to "clean up and restore" Ness International as a viable company.

8.      In May of 2006 Alpha Capital made a loan to Ness International in the principal amount of $400,000.00.  The loan was documented and administered for Alpha Capital by its agent, L.H. Financial, a New York-based firm.  Arie Rabinowitz, a vice president for L.H. Financial, testified that he and other L.H. Financial employees evaluated the credit worthiness of Ness International by, among other things, reviewing its public filings with the Securities and Exchange Commission ("SEC").  Mr. Rabinowitz stated that Ness International's assets, including its subsidiaries, were

relied upon by Alpha Capital in extending the $400,000.00 credit.  In a number of SEC filings Ness International represented that Ness Israel was its subsidiary.  *See, e.g.*, Exhibit 255.

9.      Within a year the loan to Ness International was in default.  Alpha Capital pursued litigation on the note in federal court in New York.  Ness International failed to defend the litigation, and on or about January 18, 2008, a default judgment in the amount of $545,035.30 (the "Judgment") was entered in favor of Alpha Capital and against Ness International in *Alpha Capital Anstalt vs. Ness Energy International, Inc.*, Case No. 07 Civ. 9242 (AKH), United States District Court, Southern District of New York.  Exhibit 58.

10.     Joseph Hammer with L.H. Financial, on behalf of Alpha Capital, engaged in discussions with the then-President and CEO of Ness International, Alan Stricklin, in an attempt to have assets applied to the amount of the judgement debt without court intervention.  Mr. Hammer testified that the only asset of Ness International that had some potential value at that time was Ness Israel.  Mr. Hammer discussed with Mr. Stricklin a voluntary transfer of the stock of Ness Israel, but such a transfer was not completed.  However, in anticipation of such a transfer, Mr. Hammer and counsel for Alpha Capital, Eliezer Drew, communicated with Shannon "Sha" Stephens to effectuate a change in corporate officers regarding Ness Israel. Sha Stephens had been President and CEO of Ness International prior to Mr. Stricklin, and was the sole director of Ness Israel.

11.      On February 25, 2008, Mr. Drew sent to Mr. Stephens a proposed memorandum reciting certain action by the board of Ness Israel.  The proposed memorandum recited, *inter alia*, that Ness Israel had been, and was at that time, a wholly owned subsidiary of Ness International.  The memorandum also purported to effect the resignation of Mr. Stephens as a director of the company.  Mr. Stephens made no objection to the contents of the memorandum, affixed his electronic

facsimile signature to the memorandum, and returned it to Mr. Drew.  Exhibit 85.

12.     After Mr. Stricklin failed to voluntarily transfer the stock of Ness Israel, Alpha Capital

sought court assistance.  It requested an order, pursuant to Fed.R.Civ.P. 69 and §5225 (a) of Article

52 of the New York Civil Practice Law and Rules, requiring Ness International to deliver the stock

of Ness Israel to Alpha Capital in partial satisfaction of its Judgment.  Exhibit 60.[7]

13.     On or about May 29, 2008, the New York court entered an order directing Ness International

to deliver to Alpha Capital's attorneys the stock certificates representing Ness International's entire

ownership interests in Ness Israel; Ness International was directed to do so within two weeks of its

receipt of the May 29 order.  Exhibit 63.

14.     Ness International initially failed to comply with the May 29 turnover order because,

according to Mr. Stricklin, the stock certificates representing the Ness Israel stock could not be

located.  Therefore, Mr. Drew drafted and submitted to Mr. Stricklin an Affirmation of Loss to

document the transfer of Ness Israel.  Exhibit 26.

15.     On or about August 19, 2008, Mr. Stricklin executed the Affirmation of Loss in which he

acknowledged receipt of the New York court's May 29, 2008 order directing transfer of the Ness

Israel stock certificates to Alpha Capital.  In the Affirmation of Loss, Mr. Stricklin stated he was

unable to locate the Ness Israel stock certificates, but that the same would be delivered to Alpha

Capital as soon as they were found.  He also expressly represented that Ness International "is the

owner of the Stock Certificates representing 100% of the ownership interest in Ness Israel.  Ness

hereby transfers to Alpha Capital Anstalt said Stock Certificates and all of Ness' right, title and

---

[7]Much was made by the parties during the hearing concerning whether or not the stock was sought in *partial* satisfaction of the Alpha Capital judgment, and whether Alpha Capital relied upon §5225 (a) in obtaining relief from the New York court. However, the papers filed in the New York action make clear that Alpha Capital invoked §5225 (a), and that the stock was sought in partial satisfaction of the judgment; the testimony of Mr. Drew was in accord.

interest in Ness Israel, including, but not limited to, the right to vote said shares."  Exhibit 26,  ¶¶ 2-3.

16.     Mr. Rabinowitz and Mr. Hammer testified that, after obtaining the Affirmation of Loss, they made efforts on behalf of Alpha Capital to locate a buyer for the Ness Israel stock. Those efforts were unsuccessful; Alpha Capital concluded that there was no market for the Ness Israel stock and decided to simply hold the stock in the hope that it would at some point be marketable. It is not disputed that at the time of the execution of the Affirmation of Loss the Ness Israel stock had little value, and in any event, was likely worth only a fraction of the amount of the Judgment against Ness International.  The parties are in agreement, however, that the likely *current* value of Ness Israel far exceeds the amount of the Judgment.

17.     Since obtaining the Affirmation of Loss, and through the date of the filing of the instant litigation, Alpha Capital has not placed an actual value on Ness Israel, has not applied any credit against the Judgment, and has not filed any paper in the New York court to request the appointment of a receiver or otherwise seek a judicial disposition regarding the value to be accorded the stock.

18.     Sometime in December of 2008, Mr. Hammer was contacted by Mr. Boyce regarding the situation concerning Ness International.  In the course of their discussions, Mr. Boyce stated that he had purchased Ness Israel directly from Mr. Stricklin for $10,000.00.  Mr. Hammer informed Mr. Boyce that, by virtue of the Judgment, the May 29 order, and the Affirmation of Loss, Alpha Capital asserted ownership and control of Ness Israel.

19.     Mr. Boyce had periodic involvement with Ness International dating back to the early 1990s, and for about a year in the 2002 - 2003 time frame he devoted 90% of his time to a project with the company.  Mr. Boyce ultimately came into contact with Mr. Stricklin in the fall of 2008 in

connection with Mr. Boyce's continuing interest in the activities of Ness International. During the course of his discussions with Mr. Stricklin, certain assets of Ness International – including its ownership of Ness Israel – were offered for sale. Despite Mr. Stricklin's previous execution of the Affirmation of Loss purporting to transfer ownership to Alpha Capital, on November 13, 2008 he attempted to convey Ness Israel to Mr. Boyce via a Bill of Sale covering Ness Israel and certain other assets of Ness International.[8]  Exhibit 6.

20.     The November 13 Bill of Sale was signed by Mr. Stricklin in his personal capacity; in exchange, Mr. Boyce made two payments of $5,000.00 each directly to Mr. Stricklin in his personal capacity. Mr. Stricklin testified at deposition that he used the money for personal expenses.  Mr. Stricklin also testified that the deal conveyed to Mr. Boyce a "basket full of goods" including Ness Israel, and the inclusion of Ness Israel was a "side thing."  Mr. Boyce conducted no due diligence to confirm Mr. Stricklin's authority to make the deal, or the status of Ness International's ownership of Ness Israel.

21.     During his subsequent discussions with representatives of Alpha Capital, Mr. Boyce recognized that Mr. Stricklin's authority to convey Ness Israel via the Bill of Sale was questionable; Mr. Boyce also then recognized that Alpha Capital had the superior claim to ownership of the company.  *See* Exhibits 9, 11-14.  Mr. Boyce later shipped to Mr. Hammer the Ness Israel corporate papers he had obtained from Mr. Stricklin, but kept certain geological and historical material for himself.  Mr. Boyce continued, however, with his attempts to gain control of Ness International in order to "clean up the public company" and pursue the original "vision" of producing oil and gas in Israel. Through a series of dealings with Sha Stephens, Mary Stephens (Sha's mother), and Mr.

---

[8]It is undisputed that, at the time of the execution of the Bill of Sale, Mr. Boyce had no knowledge of the Affirmation of Loss.

Stricklin, Mr. Boyce became the President and CEO of Ness International in mid-2009.

22.     In mid-to-late 2009, Mr. Boyce began having communications with persons in Israel which renewed his interest in Ness Israel and caused him to again investigate the history of the ownership of the company.  He contacted the attorney who had assisted with the incorporation of the company, Craig Towson, and obtained documents from Mr. Towson's file.  The documents – *unsigned* copies of the corporate formation papers prepared by Towson – disclosed the initial intent that Sha Stephens was to be the president, sole director, and sole shareholder of Ness Israel. Exhibits 117 and 118.  Based on these copies of unexecuted documents, Mr. Boyce concluded that Sha Stephens had been, and continued to be, the sole shareholder of Ness Israel, and that Ness International had never owned Ness Israel.[9]  Mr. Towson testified at deposition that he never witnessed the documents being signed, did not maintain copies of signed documents, never had any further involvement with Ness Israel after his preparation of the corporate formation documents, and never subsequently discussed the matter with Sha Stephens.

23.     Subsequently, in light of the copies of the unsigned corporate papers, Mr. Boyce contacted Sha Stephens and informed him that Mr. Stephens in fact was, and continued to be, the sole shareholder of Ness Israel.  Mr. Stephens did not independently recollect these facts, but did recall that he arranged for the formation of Ness Israel back in 2003.  Mr. Boyce asked Mr. Stephens to execute the various corporate documents obtained from Mr. Towson with effective dates roughly contemporaneous with the date of formation of the company.  *See, e.g.,* Exhibit 94.  Mr. Stephens

---

[9]Curiously, Mr. Boyce and the defendant group apparently continue to some degree to base their claim of ownership of Ness Israel on the November 13, 2008 Bill of Sale (Exhibit 6) executed as the personal act of the then-President and CEO of Ness International, which company the defendants also apparently argue never owned the stock in the first place. *See, e.g.*, Exhibit 28, August 13, 2009 email from Mr. Boyce ("OKT Resources, LLC purchased Ness Energy of Israel, Inc. on November 13, 2008."); Exhibit 40, May 20, 2010 demand letter ("Ownership of Ness Israel is still retained by Ness Energy."); Answer and Counterclaim of Viceroy, LLC, ¶56.

complied.  Mr. Boyce also created and had Mr. Stephens sign a stock certificate bearing the date of

September 2, 2003 on its face, but assigned by Mr. Stephens to Viceroy, LLC on May 27, 2010, as

indicated on the reverse side of the certificate.  No significant consideration was paid to Mr.

Stephens in exchange for his purported assignment and other actions in furtherance of Mr. Boyce's

request, although he testified at deposition that he received approximately $20.00 from Mr. Boyce.

24.     Even prior to receipt of the various Ness Israel corporate documents from Mr. Stephens in

May 2010, Mr. Boyce, purporting to act as the President of Ness Israel, retained counsel on April

27, 2010 in Israel to protect certain perceived valuable interests of Ness Israel currently subject to

litigation in that country.  Exhibit 35.

25.     On May 20, 2010, Viceroy, through its counsel, sent formal notice to Alpha Capital of its

competing claim to ownership of Ness Israel, and demanded that Alpha Capital "cease and desist

from representing that it is the owner of Ness Israel."  Exhibit 40.

26.     The parties agree that the pending legal action brought in Israel by Alpha Capital and on

behalf of Ness Israel involves the allegedly wrongful dilution of Ness Israel's interest in a publicly

traded Israeli company, and that Viceroy is attempting to intervene in that action on the basis of its

purported ownership of Ness Israel.[10]

Conclusions of Law:

        In light of the foregoing findings of fact and the principles of law governing preliminary

---

[10]In their initial brief in opposition to Alpha Capital's preliminary injunction motion, Defendants suggested this
Court should abstain from exercising jurisdiction over this action because of the pending Israeli action; they argued the
doctrine of international abstention is applicable in these circumstances.  The Court declines to apply the doctrine.  Based
on the evidence at the hearing and the parties' arguments, the issues in the Israeli action appear to differ from those in
this case.  Furthermore, Defendants in this action are not currently parties in the Israeli action, and counsel in this case
appear to disagree regarding the precise status of the Israeli proceedings.  The Court finds that abstention is not
appropriate under these circumstances.  *See, e.g., Hoco Drilling LLC v. Norwood Resources, Ltd.*, 2009 WL 1457751
(W. D. Okla. May 21, 2009) (unpublished opinion) (citing *Turner Entertainment Co. v. Degeto Film GmbH,* 25 F. 3d
1512 (11th Cir. 1994)).

injunctions, the Court makes the following conclusions of law:

The parties do not dispute that this Court has jurisdiction over the subject matter of this action pursuant to 28 U. S. C. § 1332, and that it has jurisdiction over the parties.

Alpha Capital's motion seeks a preliminary injunction to preserve the status quo with regard to assertions of ownership of the stock of Ness Israel until the Court can determine the issue of ownership in connection with the final adjudication of Alpha Capital's claim, and Viceroy's counterclaim, for declaratory relief.

The status quo is the "last peaceable uncontested status existing between the parties before the dispute developed." *See Schrier v. University of Colorado*, 427 F. 3d 1253, 1260 (10th Cir. 2005)(internal quotations omitted). In this case, the last "peaceable uncontested status" between these parties was prior to the competing claims of OKT or Viceroy to ownership of the Ness Israel stock; at that time, Alpha Capital was recognized as the owner of the stock.

With respect to the factors required to warrant issuance of a preliminary injunction, the Court concludes that the "modified" standard for preliminary injunctive relief is applicable to this case.

Under that standard, the burden of showing a likelihood of success on the merits is modified if the plaintiff shows that the factors of irreparable harm, balancing of hardships, and the public interest tip strongly in its favor; if so, the movant may satisfy the likelihood of success on the merits factor by showing "that questions going to the merits are so serious, substantial, difficult, and doubtful as to make the issue ripe for litigation and deserving of more deliberate investigation." *Davis v. Mineta*, 302 F. 3d 1104, 1111 (10th Cir. 2002).

Alpha Capital has demonstrated that irreparable harm will likely result if preliminary

injunctive relief is not granted, as loss of control of a corporation by a majority stockholder or the right to participate in the management of a company constitutes irreparable harm which cannot readily be remedied by an award of damages. *Int'l Equity Investments, Inc. v. Opportunity Equity Partners, Ltd.,* 441 F. Supp. 2d 552, 563 (S. D. N. Y. 2006); *Davis v. Rondina,* 741 F. Supp. 1115, 1125 ( S. D. N. Y. 1990); *Danaher Corp. v. Chicago Pneumatic Tool Co.*, 1986 WL 7001, at *14 ( S. D. N. Y. June 19, 1986) (unpublished opinion). A "controlling interest in a corporation is also an important and unique interest," the loss of which cannot be readily compensated by a damages award. *Beztak Co. v. Bank One Columbus, N. A.,* 811 F. Supp. 274, 284 (E. D. Mich. 1992)(citing *United Acquisitions Corp. v. Banque Paribas*, 631 F. Supp. 797 (S. D. N. Y. 2985)).

The specific circumstances of the facts presented determine whether such prospective loss is too remote or speculative to constitute irreparable harm. *Beztak*, 811 F. Supp. at 284. In this case, Alpha Capital has demonstrated that the loss it articulates is not remote or speculative, as the competing claims to ownership of Ness Israel and the challenges to Alpha Capital's right to ownership and control are clearly established by Defendants' contentions and the evidence in this case.

In contrast, Defendants have not presented evidence to show that they will suffer harm if the preliminary injunction is granted. Defendants' main assertion of harm is their argument that, if Alpha Capital ultimately is determined to own 100 percent of Ness Israel's stock, it will receive a financial benefit exceeding the value of the Judgment against Ness International; this is based on the evidence that, although the value of Ness Israel was far less than the Judgment at the time of the execution of the Affirmation of Loss, the parties now agree its current value is significantly greater than the Judgment amount. That argument does not establish harm to Defendants if preliminary

injunctive relief is granted.  The possibility of an ultimate inequitable benefit to Alpha Capital in the event it finally prevails can certainly be addressed by the Court in connection with any final adjudication of the parties' equitable claims.[11]  Accordingly, the Court concludes that Alpha Capital has established irreparable harm and that the balance of hardship tips decidedly in its favor.

With respect to the impact of a preliminary injunction on the public interest, the parties have not devoted significant argument to this factor.  Alpha Capital suggests that there is a public interest in adjudicating the ownership of a corporation as well as avoiding interference with the Court's ability to determine the correct ownership at the conclusion of the litigation.  The Court finds no evidence that issuing a preliminary injunction would be detrimental to the public interest; thus, this factor does not preclude injunctive relief.

Having concluded that Alpha Capital has satisfied the foregoing factors, the Court also concludes that the likelihood of success on the merits factor is properly modified because Alpha Capital has established that this case presents questions going to the merits which are serious, substantial and difficult, and are deserving of more deliberate investigation.  *See Davis*, 302 F. 3d at 1111.

Defendants have challenged the procedural propriety of the New York court's order directing transfer of the stock to Alpha Capital, contending that Alpha Capital was required to follow the execution procedures, including transfer of the Ness Israel stock to a sheriff for sale, in order to

---

[11]The parties have invoked the equity jurisdiction of the Court.  The essence of such jurisdiction has long been recognized as the power "'to do equity and mould each decree to the necessities of the particular case.'" *Blood v. Fleming,* 161 F.2d 292 (10th Cir. 1947)(quoting *Hecht Co. v. Bowles*, 321 U.S. 321, 329 (1944)).  The Court has at its disposal "all the inherent equitable powers of the District Court" for the proper and complete exercise of its jurisdiction. *Mitchell v. Robert DeMarco Jewelry, Inc.,* 361 U.S. 288, 291 (1960).  The Court may apply flexible powers "as might be necessary to the right administration of justice between the parties." *Grupo Medicago de Desirously, S.A. v. Alliance Bond Fund, Inc.,* 527 U.S. 308, 336 (1999).  The instant case may well require a flexible approach so as to adapt a particular remedy to effect complete justice between the parties.

satisfy its Judgment.  *See* Article 52, New York Civil Practice Law and Rules § 5225(a).

Defendants contend that, because the New York execution procedures were not satisfied, Alpha Capital cannot claim ownership of the stock as a result of the New York court order. Defendants further argue that Alpha Capital cannot lawfully retain the stock as a means of satisfying or partially satisfying the Judgment.  Alpha Capital contends that the New York court was authorized to direct the transfer as a means of partially satisfying the Judgment, and was not required to apply the execution procedures set forth in the New York state law.

This dispute reflects that the ultimate determination of the rights to ownership of Ness Israel stock may require application of New York law as well as the Federal Rules of Civil Procedure. Furthermore, the parties have submitted limited case law addressing this issue, and it cannot be readily determined at this stage of the proceedings.  Significantly, Defendants have pointed the Court to no authority which establishes a time limit for compliance with the New York state procedure, or mandates a forfeiture based on delay.  The Court concludes that this issue presents a serious and substantial question requiring further investigation.

The evidence before the Court regarding Viceroy's claims to ownership of the Ness Israel stock further complicates the issues.  The parties presented a significant number of exhibits, including numerous documents reflecting purported transfers of stock over several years culminating in the alleged ownership by Viceroy.  While the Court tends to view the evidence on which Viceroy relies to support it's ownership claim with skepticism, the Court cannot make a determination in that regard at this early stage.  At a minimum, Viceroy's claim complicates the issue of ownership and further supports application of the modified standards governing preliminary injunctive relief.

Accordingly, the Court concludes that, under the modified standards governing preliminary

injunctive relief, Alpha Capital has satisfied its burden of showing a right to such relief.   A preliminary injunction will be granted as set forth herein.

B.  Motion for "Preliminary Declaratory Relief:"

In addition to requesting a preliminary injunction, Alpha Capital asks the Court to grant "preliminary declaratory relief" by concluding that it is the owner of Ness Israel's stock.  In support of this request, Alpha Capital cites limited authority and concedes that some courts have questioned whether such relief is available.  The Court has reviewed the authorities cited by Alpha Capital and finds they do not support a grant of preliminary declaratory relief under the facts of this case; having conducted further research, the Court finds the propriety of such relief in any case is, at best, questionable.

In *Merrill Lynch, Pierce, Fenner & Smith v. Doe*, 868 F. Supp. 532 ( S. D. N. Y. 1994), cited by Alpha Capital, the court granted the plaintiff's request for relief which was described as "preliminary declaratory relief."  The action resulted from a dispute between Merrill Lynch and a former financial consultant;  Merrill Lynch claimed that, after his employment was terminated, the consultant violated his employment agreement by soliciting Merrill Lynch clients, and he possessed Merrill Lynch's confidential client information.  The consultant denied his agreement restricted his ability to solicit Merrill Lynch clients, and denied he possessed confidential information.  The dispute was submitted for arbitration.  While arbitration was pending, the consultant filed a state court action and sought a temporary restraining order prohibiting Merrill Lynch from seeking relief in federal court pending the outcome of the arbitration proceeding.  However, Merrill Lynch had, in the interim, filed a federal action seeking an injunction prohibiting the consultant's use of confidential information while the arbitration was pending.  Merrill Lynch then asked the federal

court to issue an order declaring that its right to seek federal injunctive relief could not be restrained by a state court. *Id.* at 533-34.

The federal court characterized Merrill Lynch's requested order as one seeking "preliminary declaratory relief," and found that some courts had allowed such relief, while others disagreed. Relying on the established rule that a state court lacks power to enjoin federal court proceedings, the court concluded the consultant's state court action was designed to accomplish that result. *Id.* at 536-37 (citations omitted). The federal court concluded that it was appropriate to issue an order granting temporary declaratory relief stating that Merrill Lynch had the right to seek injunctive relief which would, while the arbitration was pending, protect it from alleged misappropriation of its confidential customer information.

Alpha Capital also cites *Disabled in Action of Pennsylvania v. Southeastern Pennsylvania Transportation Authority,* 539 F. 3d 199, 215 (3d Cir. 2008), in which the plaintiffs sought to enjoin completion of modifications to subway stations, arguing the project failed to comply with the Americans with Disabilities Act ("ADA") requirements for disability access.  In addressing the claims, the court observed that, in advance of the project's commencement, the defendant could have sought a legal ruling in the form of a declaratory judgment that the planned project complied with the ADA, and noted that such action could have avoided the expense of undertaking projects which were later found to violate the ADA. *Id.* at 216-217.  The court was not expressly asked to enter preliminary declaratory relief, but observed that such procedure could be available in the circumstances presented.

As Alpha Capital concedes, other courts have refused requests for preliminary declaratory relief, and some have questioned whether such relief is available: "As to plaintiff's claim for

preliminary declaratory relief, it is not entirely clear that such relief is *ever* available." *Murray v. New York*, 604 F. Supp. 2d 581, 587 (W. D. N. Y. 2009) (emphasis in original). *See also Original Great Am. Choc Chip Cookie Co., Inc. v. River Valley Cookies, Ltd.*, 970 F. 2d 273, 276 (7th Cir. 1992) (noting conflicting lower court authority as to whether "there is such a creature" as a preliminary declaratory judgment, and finding it unnecessary to decide the issue).

The Court agrees that the propriety of such relief is questionable. In any event, those few courts which have allowed preliminary declaratory relief did so in circumstances clearly distinguishable from those presented in this case. The facts of both *Merrill Lynch* and *Disabled in Action* are distinguishable from those in this case, and the Court finds neither decision persuasive. Alpha Capital seeks a preliminary ruling that it is the owner of 100 percent of the stock of Ness Israel. That is the ultimate issue for determination in its request for declaratory relief, and a preliminary ruling in its favor would grant it full relief on that issue. Given the conflicting claims to ownership asserted in this action, that issue is not properly determined at this stage of the proceedings.

Accordingly, even if this Court were to recognize the availability of the relief requested by Alpha Capital, it would not be appropriate in this case. The request for "preliminary declaratory relief" is denied.

## **ORDER**

It is therefore ordered, adjudged, and decreed that Plaintiff's Motion for Preliminary Injunctive and Declaratory Relief [Doc. No. 13] is granted in part and denied in part as set forth herein.

Defendants are hereby preliminarily enjoined from holding out Ness Energy, OKT, or Viceroy as the owner of Ness Israel.  This preliminary injunction applies to Defendants and their agents, employees, and others acting on behalf of Defendants.  This preliminary injunction shall remain in full force and effect until this action can be determined on the merits, or until further order of the Court.

Pursuant to Fed.R.Civ.P. 65(c), the Court finds that security in the amount of $25,000.00 is sufficient, and shall be posted by Plaintiff forthwith.

IT IS SO ORDERED this 24th day of January, 2011.

_____
TIMOTHY D. DeGIUSTI
UNITED STATES DISTRICT JUDGE

**IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA**

ALPHA CAPITAL ANSTALT, a      )
  Liechtenstein corporation,       )
                                     )
           Plaintiff,           )
                                     )
v.                                   )    NO. CIV-10-1218-D
                                     )
NESS ENERGY INTERNATIONAL, INC., a  )
  Washington corporation,  et al.,     )
                                     )
           Defendants.         )

**FINDINGS OF FACT, CONCLUSIONS OF LAW,
AND ORDER**

Before the Court is the Motion [Doc. No. 13] of Plaintiff Alpha Capital Anstalt ("Alpha Capital") for Preliminary Injunctive and Declaratory Relief.  Defendants filed a response and, pursuant to the Court's December 17, 2010 Order [Doc. No. 36], the parties were authorized to conduct limited expedited discovery regarding the request for preliminary injunctive relief and to submit supplemental briefs following the completion of that discovery.

On January 20 and 21, 2011, the Court conducted a hearing on the motion.  At the close of the hearing, the Court advised the parties that, if they wished to supplement their closing arguments, they could do so in written form to be filed no later than 9:00 a.m. on Monday, January 24, 2011.  The parties timely submitted written arguments.  Having considered the evidence and the arguments of counsel, the Court finds as follows.

Background:

In this action, Alpha Capital seeks a declaratory judgment[1] that it is the owner of 100 percent

---

[1]Alpha Capital also asserts claims of intentional interference with its contractual or business relationships and a civil conspiracy by defendants to deprive Alpha Capital of its ownership of Ness Israel.  Because Alpha Capital's request for injunctive relief is not based on these causes of action, they are not addressed herein.

of the stock of Ness Energy of Israel, Inc. ("Ness Israel").  It alleges the stock was acquired as a result of a May 29, 2008 order of the United States District Court for the Southern District of New York (the "New York court") directing that Ness Energy International, Inc. ("Ness International")[2] deliver the Ness Israel stock to Alpha Capital in partial satisfaction of a January 18, 2008 judgment entered in favor of Alpha Capital and against Ness International by the New York court.  According to Alpha Capital, Ness Israel was a wholly owned subsidiary of Ness International at the time. Alpha Capital alleges that, on August 19, 2008, Ness International's chief executive officer, Alan Stricklin, executed an "Affirmation of Loss," representing that the Ness Israel stock certificates could not be located; however, Mr. Stricklin also expressly acknowledged Alpha Capital's ownership of the stock and the attendant rights of ownership, and stated the certificates would be delivered to Alpha Capital as soon as they were found.

Alpha Capital alleges that, later in 2008 and in 2010, it learned of competing claims to the ownership of Ness Israel's stock.  In 2008, Alpha Capital was notified that Defendant OKT Resources, LLC ("OKT") claimed ownership of 100 percent of Ness Israel's stock as a result of a November 13, 2008 sale by Ness International.  Alpha Capital alleges that it notified OKT's general manager, Defendant David Boyce, of its ownership of Ness Israel, and provided him with documents evidencing the New York court order and the Affirmation of Loss.  According to Alpha Capital, Mr. Boyce then acknowledged that the November 13, 2008 purported sale was unauthorized and that Ness International had previously conveyed the Ness Israel stock to Alpha Capital; Mr. Boyce later

---

[2]In the testimony and the documents submitted, the parties have referred to Ness Energy International, Inc. as Ness Energy, Ness International, or the "public company."  The Court will refer to it as Ness International in this Order.

sent the Ness Israel materials in his possession to Alpha Capital's representatives.[3]  Alpha Capital also alleges that, in May 2010, it was notified by Defendant Viceroy, LLC ("Viceroy"), for which Mr. Boyce also served as general manager, that Viceroy claimed ownership of 100 percent of Ness Israel's stock as a result of a May 27, 2010 transfer to Viceroy from Shannon "Sha" Stephens.

In 2010, Alpha Capital learned that a wholly owned subsidiary of Ness Israel had caused the transfer of 95 percent of the subsidiary's stock to another entity.  Because Ness Israel had not authorized its subsidiary to take that action, Alpha Capital made inquiries, and it learned that Viceroy had represented to involved persons in Israel that Viceroy owned 100 percent of the Ness Israel stock.  Alpha Capital, on its own behalf and on behalf of Ness Israel, ultimately filed a lawsuit in Israel challenging the validity of the subsidiary's stock transfer; the action remains pending, and Viceroy is seeking to intervene in that action.

In their answers to the Complaint, all defendants deny that Alpha Capital is the owner of Ness Israel's stock. They contend the August 19, 2008 transfer via the Affirmation of Loss was invalid because Mr. Stricklin was not authorized to transfer Ness Israel's stock at that time and/or because Alpha failed to comply with New York law regarding the transfer of stock in partial satisfaction of its judgment.   Viceroy asserts a counterclaim alleging that it is the lawful owner of Ness Israel, contending that Ness International did not own Ness Israel at the time of the purported August 19, 2008 transfer to Alpha Capital.  Viceroy alleges that Sha Stephens owned all of Ness Israel's stock at that time and that he transferred it to Viceroy in May of 2010.

The only issue now before the Court is whether Alpha Capital is entitled to a preliminary injunction and/or preliminary declaratory relief.  Alpha Capital seeks to preliminarily enjoin the

---

[3]In his Answer, Mr. Boyce denies acknowledging the transfer to OKT was invalid or Alpha Capital's ownership; he admits he sent some Ness Israel materials to Alpha Capital's representatives.

defendants from representing that Ness International, OKT or Viceroy own the stock of Ness Israel, pending the resolution of the claims in this lawsuit.  It contends that the evidence shows the factors warranting preliminary injunctive relief are present.   Alpha Capital's request for preliminary declaratory relief asks the Court to determine, at this stage of the litigation, that it is the owner of Ness Israel's stock.  It contends that such a remedy is proper in these circumstances.

Defendants contend that Alpha Capital's request for preliminary declaratory relief must be denied because such relief is not an authorized remedy, and that its request for a preliminary injunction must be denied because it cannot establish the elements required to warrant such relief.

Preliminary Injunction Standards:

"Preliminary injunctions are extraordinary equitable remedies designed to 'preserve the relative positions of the parties until a trial on the merits can be held.'" *Westar Energy, Inc. v. Lake*, 552 F. 3d 1215, 1224 (10th Cir. 2009) (quoting *University of Texas v. Camenisch*, 451 U. S. 390, 395 (1981)).  Thus, a preliminary injunction "serves to preserve the status quo." *MacArthur v. San Juan County*, 497 F. 3d 1057, 1066 (10th Cir. 2007),  (citing *Keirnan v. Utah Transit Authority*, 339 F. 3d 1217, 1220 (10th Cir. 2003)).  "In issuing a preliminary injunction, a court is primarily attempting to preserve the power to render a meaningful decision on the merits." *Keirnan*, 339 F. 3d at 1220. "[B]ecause a preliminary injunction is an extraordinary remedy, the right to relief must be clear and unequivocal." *Port City Properties v. Union Pacific R. Co.*, 518 F. 3d 1186, 1190 (10th Cir. 2008).

"[T]he status quo is 'the last uncontested status between the parties which preceded the controversy until the outcome of the final hearing.'" *Schrier v. University of Colorado*,  427 F. 3d 1253, 1260 (10th Cir. 2005) (emphasis added) (quoting *Dominion Video Satellite, Inc. v. EchoStar Satellite Corp.*, 269 F. 3d 1149, 1155 (10th Cir.2001) (quoting *SCFC  ILC, Inc. v. Visa USA, Inc*.,

936 F.2d 1096, 1100 n.8 (10th Cir. 1991), *overruled on other grounds*, *O Centro Espirita Beneficiente Uniao Do Vegetal v. Ashcroft*, 389 F. 3d 973, 975 (10th Cir. 2004))[4]. It is also described as the "'last peaceable uncontested status existing between the parties before the dispute developed.'" *Schrier*, 427 F. 3d at 1260 (emphasis added) (quoting 11A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 2948, at 136 (2d ed.1995)). "In determining the status quo for preliminary injunctions, this court looks to the reality of the existing status and relationship between the parties and not solely to the parties' legal rights." *Schrier*, 427 F. 3d at 1260.

To obtain a preliminary injunction, the movant must show: 1) a substantial likelihood of success on the merits; 2) irreparable harm to the movant if the injunction is denied; 3) the threatened harm to the movant outweighs any harm to the opposing party if the injunction issues; and 4) issuance of the injunction would not be adverse to the public interest. *Flood v. ClearOne Communications, Inc.,* 618 F. 3d 1110, 1117 (10th Cir. 2010); *Heideman v. South Salt Lake City,* 348 F. 3d 1182, 1188 (10th Cir. 2003); *Kikumura v. Hurley*, 242 F. 3d 950, 955 (10th Cir. 2001).

Substantial Likelihood of Success on the Merits:

To demonstrate a substantial likelihood of success on the merits of its claim, a plaintiff is required "to present 'a prima facie case showing a reasonable probability that [it] will ultimately be entitled to the relief sought.'" *Salt Lake Tribune Pub. Co., LLC v. AT & T Corp.* 320 F. 3d 1081,

---

[4]*SCFC ILC* was overruled by *O Centro* only as to the burden on a movant seeking a mandatory or otherwise disfavored injunction. *SCFC ILC* held that the movant in such cases must establish the factors weigh "heavily and compellingly" in his favor; *O Centro* "jettison[ed] that part of *SCFC ILC,*" rejecting that level of proof and held that the movant in such cases must "make a strong showing both with regard to the likelihood of success on the merits and with regard to the balance of harms, and may not rely on our modified likelihood-of-success-on-the-merits standard." *O Centro*, 389 F. 3d at 975-76.

1100 (10th Cir. 2003) (quoting *Autoskill v. Nat'l Educ. Support Sys.*, 994 F.2d 1476, 1487 (10th Cir.1993)).  The movant is not required to show there is an "absolute certainty" that it will prevail on the merits.  *Autoskill*, 994 F. 2d at 1487.  Nor is it required to show an "overwhelming likelihood" of success.  *Koerpel v. Heckler*, 797 F. 2d 858, 867 n. 5 (10th Cir. 1986) (citing *Atchison, Topeka, and Santa Fe. Railway Co. v. Lennen*, 640 F. 2d 255, 261 (10th Cir. 1981)).

The movant's burden of showing a likelihood of success on the merits is modified if it establishes that the factors of irreparable harm, balancing of hardships, and the public interest  tip strongly in its favor; if so, the movant may satisfy the likelihood of success on the merits factor by showing "that questions going to the merits are so serious, substantial, difficult, and doubtful as to make the issue ripe for litigation and deserving of more deliberate investigation."  *Davis v. Mineta*, 302 F. 3d 1104, 1111 (10th Cir. 2002); *Fed. Lands Legal Consortium ex rel. Robart Estate v. United States*, 195 F. 3d 1190, 1195 (10th Cir. 1999)[5].

Irreparable Harm:

The Tenth Circuit has emphasized the importance of showing irreparable harm: "In examining these factors, courts have consistently noted that 'b]ecause a showing of probable irreparable harm is the single most important prerequisite for the issuance of a preliminary injunction, the moving party must first demonstrate that such injury is likely before the other requirements for the issuance of an injunction will be considered.'" *Dominion Video Satellite, Inc. v. Echostar Satellite Corp.,*  356 F. 3d 1256, 1260 (10th Cir. 2004)(internal citations omitted).

---

[5]The modified test does not apply where the requested relief is among the "disfavored" categories of injunctions, including those which: 1) disturb the status quo; 2) are mandatory as opposed to prohibitory; or 3) afford the movant substantially all the relief he may recover at the conclusion of a full trial on the merits.  *See O Centro Espirta Beneficiente Uniao Do Vegetal v. Ashcroft*, 389 F.3d 973, 975 (10th Cir. 2004) (per curiam), *aff'd*, 546 U.S. 418 (2006).  Alpha Capital's motion does not involve any of the disfavored categories.  Therefore, the Court may use the modified test if the circumstances warrant its application.

"An irreparable harm requirement is met if a plaintiff demonstrates a significant risk that he or she will experience harm that cannot be compensated after the fact by monetary damages." *Greater Yellowstone Coalition v. Flowers*, 321 F. 3d 1250, 1258 (10th Cir. 2003). "Purely speculative harm will not suffice, but rather, '[a] plaintiff who can show a significant risk of irreparable harm has demonstrated that the harm is not speculative' and will be held to have satisfied his burden." *RoDa Drilling Co. v. Siegal*, 552 F. 3d 1203, 1210 (10th Cir. 2009) (quoting *Greater Yellowstone*, 321 F. 3d at 1258). "In determining whether a plaintiff has made the requisite showing, we further assess 'whether such harm is likely to occur before the district court rules on the merits.'" *RoDa Drilling*, 552 F. 3d at 1210 (quoting *Greater Yellowstone*, 321 F. 3d at 1258). "If 'a trial on the merits can be conducted before the injury would occur there is no need for interlocutory relief.'" *Id.* (quoting 11A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 2948.1, at 139-40 (2d ed. 1995)).

Balancing of Harm to the Parties:

When balancing the equities among the parties, the Court must consider whether the threatened injury to the movant outweighs the potential harm to the defendants if the injunction issues. *See, e.g., Kikumura v. Hurley*, 242 F. 3d 950, 955 (10th Cir. 2001).

Consideration of the Public Interest:

A party seeking a preliminary injunction is not required to show that the requested injunctive relief will serve the public interest; rather, it must show the issuance of the injunction would not be adverse to the public interest. *Heideman v. South Salt Lake City,* 348 F. 3d 1182, 1188 (10th Cir. 2003); *Kikumura v. Hurley*, 242 F. 3d 950, 955 (10th Cir. 2001).[6]

---

[6]In this case, the parties do not assert that the public interest will be affected by the requested injunction.

Application:

A.  Motion for Preliminary Injunction:

Findings of Fact:

1.      Alpha Capital is a Liechtenstein corporation with its principal place of business in Balzers, Liechtenstein.

2.      Ness International is a Washington corporation having its principal place of business in Edmond, Oklahoma.

3.      OKT Resources and Viceroy are both Oklahoma limited liability companies having their principal places of business in Edmond, Oklahoma.

4.      Mr. Boyce is a citizen of Oklahoma and resides in Edmond, Oklahoma.

5.      Mr. Boyce is currently the President and Chief Executive Officer of Ness International; he is also currently the manager and part owner of both OKT Resources and Viceroy.

6.      OKT Resources is an oil and gas exploration and production company which operates in Oklahoma and other states.

7.      Viceroy was formed by Mr. Boyce as a holding company for the purpose of attempting to "clean up and restore" Ness International as a viable company.

8.      In May of 2006 Alpha Capital made a loan to Ness International in the principal amount of $400,000.00.  The loan was documented and administered for Alpha Capital by its agent, L.H. Financial, a New York-based firm.  Arie Rabinowitz, a vice president for L.H. Financial, testified that he and other L.H. Financial employees evaluated the credit worthiness of Ness International by, among other things, reviewing its public filings with the Securities and Exchange Commission ("SEC").  Mr. Rabinowitz stated that Ness International's assets, including its subsidiaries, were

relied upon by Alpha Capital in extending the $400,000.00 credit.  In a number of SEC filings Ness International represented that Ness Israel was its subsidiary.  *See, e.g.*, Exhibit 255.

9.      Within a year the loan to Ness International was in default.  Alpha Capital pursued litigation on the note in federal court in New York.  Ness International failed to defend the litigation, and on or about January 18, 2008, a default judgment in the amount of $545,035.30 (the "Judgment") was entered in favor of Alpha Capital and against Ness International in *Alpha Capital Anstalt vs. Ness Energy International, Inc.*, Case No. 07 Civ. 9242 (AKH), United States District Court, Southern District of New York.  Exhibit 58.

10.     Joseph Hammer with L.H. Financial, on behalf of Alpha Capital, engaged in discussions with the then-President and CEO of Ness International, Alan Stricklin, in an attempt to have assets applied to the amount of the judgement debt without court intervention.  Mr. Hammer testified that the only asset of Ness International that had some potential value at that time was Ness Israel.  Mr. Hammer discussed with Mr. Stricklin a voluntary transfer of the stock of Ness Israel, but such a transfer was not completed.  However, in anticipation of such a transfer, Mr. Hammer and counsel for Alpha Capital, Eliezer Drew, communicated with Shannon "Sha" Stephens to effectuate a change in corporate officers regarding Ness Israel. Sha Stephens had been President and CEO of Ness International prior to Mr. Stricklin, and was the sole director of Ness Israel.

11.      On February 25, 2008, Mr. Drew sent to Mr. Stephens a proposed memorandum reciting certain action by the board of Ness Israel.  The proposed memorandum recited, *inter alia*, that Ness Israel had been, and was at that time, a wholly owned subsidiary of Ness International.  The memorandum also purported to effect the resignation of Mr. Stephens as a director of the company.  Mr. Stephens made no objection to the contents of the memorandum, affixed his electronic

facsimile signature to the memorandum, and returned it to Mr. Drew.  Exhibit 85.

12.     After Mr. Stricklin failed to voluntarily transfer the stock of Ness Israel, Alpha Capital

sought court assistance.  It requested an order, pursuant to Fed.R.Civ.P. 69 and §5225 (a) of Article

52 of the New York Civil Practice Law and Rules, requiring Ness International to deliver the stock

of Ness Israel to Alpha Capital in partial satisfaction of its Judgment.  Exhibit 60.[7]

13.     On or about May 29, 2008, the New York court entered an order directing Ness International

to deliver to Alpha Capital's attorneys the stock certificates representing Ness International's entire

ownership interests in Ness Israel; Ness International was directed to do so within two weeks of its

receipt of the May 29 order.  Exhibit 63.

14.     Ness International initially failed to comply with the May 29 turnover order because,

according to Mr. Stricklin, the stock certificates representing the Ness Israel stock could not be

located.  Therefore, Mr. Drew drafted and submitted to Mr. Stricklin an Affirmation of Loss to

document the transfer of Ness Israel.  Exhibit 26.

15.     On or about August 19, 2008, Mr. Stricklin executed the Affirmation of Loss in which he

acknowledged receipt of the New York court's May 29, 2008 order directing transfer of the Ness

Israel stock certificates to Alpha Capital.  In the Affirmation of Loss, Mr. Stricklin stated he was

unable to locate the Ness Israel stock certificates, but that the same would be delivered to Alpha

Capital as soon as they were found.  He also expressly represented that Ness International "is the

owner of the Stock Certificates representing 100% of the ownership interest in Ness Israel.  Ness

hereby transfers to Alpha Capital Anstalt said Stock Certificates and all of Ness' right, title and

---

[7]Much was made by the parties during the hearing concerning whether or not the stock was sought in *partial*
satisfaction of the Alpha Capital judgment, and whether Alpha Capital relied upon §5225 (a) in obtaining relief from
the New York court. However, the papers filed in the New York action make clear that Alpha Capital invoked §5225
(a), and that the stock was sought in partial satisfaction of the judgment; the testimony of Mr. Drew was in accord.

interest in Ness Israel, including, but not limited to, the right to vote said shares." Exhibit 26, ¶¶ 2-3.

16.     Mr. Rabinowitz and Mr. Hammer testified that, after obtaining the Affirmation of Loss, they made efforts on behalf of Alpha Capital to locate a buyer for the Ness Israel stock. Those efforts were unsuccessful; Alpha Capital concluded that there was no market for the Ness Israel stock and decided to simply hold the stock in the hope that it would at some point be marketable. It is not disputed that at the time of the execution of the Affirmation of Loss the Ness Israel stock had little value, and in any event, was likely worth only a fraction of the amount of the Judgment against Ness International.  The parties are in agreement, however, that the likely *current* value of Ness Israel far exceeds the amount of the Judgment.

17.     Since obtaining the Affirmation of Loss, and through the date of the filing of the instant litigation, Alpha Capital has not placed an actual value on Ness Israel, has not applied any credit against the Judgment, and has not filed any paper in the New York court to request the appointment of a receiver or otherwise seek a judicial disposition regarding the value to be accorded the stock.

18.     Sometime in December of 2008, Mr. Hammer was contacted by Mr. Boyce regarding the situation concerning Ness International.  In the course of their discussions, Mr. Boyce stated that he had purchased Ness Israel directly from Mr. Stricklin for $10,000.00.  Mr. Hammer informed Mr. Boyce that, by virtue of the Judgment, the May 29 order, and the Affirmation of Loss, Alpha Capital asserted ownership and control of Ness Israel.

19.     Mr. Boyce had periodic involvement with Ness International dating back to the early 1990s, and for about a year in the 2002 - 2003 time frame he devoted 90% of his time to a project with the company.  Mr. Boyce ultimately came into contact with Mr. Stricklin in the fall of 2008 in

connection with Mr. Boyce's continuing interest in the activities of Ness International.  During the course of his discussions with Mr. Stricklin, certain assets of Ness International – including its ownership of Ness Israel – were offered for sale.  Despite Mr. Stricklin's previous execution of the Affirmation of Loss purporting to transfer ownership to Alpha Capital, on November 13, 2008 he attempted to convey Ness Israel to Mr. Boyce via a Bill of Sale covering Ness Israel and certain other assets of Ness International.[8]  Exhibit 6.

20.     The November 13 Bill of Sale was signed by Mr. Stricklin in his personal capacity; in exchange, Mr. Boyce made two payments of $5,000.00 each directly to Mr. Stricklin in his personal capacity. Mr. Stricklin testified at deposition that he used the money for personal expenses.  Mr. Stricklin also testified that the deal conveyed to Mr. Boyce a "basket full of goods" including Ness Israel, and the inclusion of Ness Israel was a "side thing."  Mr. Boyce conducted no due diligence to confirm Mr. Stricklin's authority to make the deal, or the status of Ness International's ownership of Ness Israel.

21.     During his subsequent discussions with representatives of Alpha Capital, Mr. Boyce recognized that Mr. Stricklin's authority to convey Ness Israel via the Bill of Sale was questionable; Mr. Boyce also then recognized that Alpha Capital had the superior claim to ownership of the company.  *See* Exhibits 9, 11-14.  Mr. Boyce later shipped to Mr. Hammer the Ness Israel corporate papers he had obtained from Mr. Stricklin, but kept certain geological and historical material for himself.  Mr. Boyce continued, however, with his attempts to gain control of Ness International in order to "clean up the public company" and pursue the original "vision" of producing oil and gas in Israel. Through a series of dealings with Sha Stephens, Mary Stephens (Sha's mother), and Mr.

---

[8]It is undisputed that, at the time of the execution of the Bill of Sale, Mr. Boyce had no knowledge of the Affirmation of Loss.

12

Stricklin, Mr. Boyce became the President and CEO of Ness International in mid-2009.

22.     In mid-to-late 2009, Mr. Boyce began having communications with persons in Israel which renewed his interest in Ness Israel and caused him to again investigate the history of the ownership of the company.  He contacted the attorney who had assisted with the incorporation of the company, Craig Towson, and obtained documents from Mr. Towson's file.  The documents – *unsigned* copies of the corporate formation papers prepared by Towson – disclosed the initial intent that Sha Stephens was to be the president, sole director, and sole shareholder of Ness Israel. Exhibits 117 and 118.  Based on these copies of unexecuted documents, Mr. Boyce concluded that Sha Stephens had been, and continued to be, the sole shareholder of Ness Israel, and that Ness International had never owned Ness Israel.[9]  Mr. Towson testified at deposition that he never witnessed the documents being signed, did not maintain copies of signed documents, never had any further involvement with Ness Israel after his preparation of the corporate formation documents, and never subsequently discussed the matter with Sha Stephens.

23.     Subsequently, in light of the copies of the unsigned corporate papers, Mr. Boyce contacted Sha Stephens and informed him that Mr. Stephens in fact was, and continued to be, the sole shareholder of Ness Israel.  Mr. Stephens did not independently recollect these facts, but did recall that he arranged for the formation of Ness Israel back in 2003.  Mr. Boyce asked Mr. Stephens to execute the various corporate documents obtained from Mr. Towson with effective dates roughly contemporaneous with the date of formation of the company.  *See, e.g.,* Exhibit 94.  Mr. Stephens

---

[9]Curiously, Mr. Boyce and the defendant group apparently continue to some degree to base their claim of ownership of Ness Israel on the November 13, 2008 Bill of Sale (Exhibit 6) executed as the personal act of the then-President and CEO of Ness International, which company the defendants also apparently argue never owned the stock in the first place.  *See, e.g.*, Exhibit 28, August 13, 2009 email from Mr. Boyce ("OKT Resources, LLC purchased Ness Energy of Israel, Inc. on November 13, 2008."); Exhibit 40, May 20, 2010 demand letter ("Ownership of Ness Israel is still retained by Ness Energy.");  Answer and Counterclaim of Viceroy, LLC, ¶56.

complied.  Mr. Boyce also created and had Mr. Stephens sign a stock certificate bearing the date of

September 2, 2003 on its face, but assigned by Mr. Stephens to Viceroy, LLC on May 27, 2010, as

indicated on the reverse side of the certificate.   No significant consideration was paid to Mr.

Stephens in exchange for his purported assignment and other actions in furtherance of Mr. Boyce's

request, although he testified at deposition that he received approximately $20.00 from Mr. Boyce.

24.     Even prior to receipt of the various Ness Israel corporate documents from Mr. Stephens in

May 2010, Mr. Boyce, purporting to act as the President of Ness Israel, retained counsel on April

27, 2010 in Israel to protect certain perceived valuable interests of Ness Israel currently subject to

litigation in that country.  Exhibit 35.

25.     On May 20, 2010, Viceroy, through its counsel, sent formal notice to Alpha Capital of its

competing claim to ownership of Ness Israel, and demanded that Alpha Capital "cease and desist

from representing that it is the owner of Ness Israel."  Exhibit 40.

26.     The parties agree that the pending legal action brought in Israel by Alpha Capital and on

behalf of Ness Israel involves the allegedly wrongful dilution of Ness Israel's interest in a publicly

traded Israeli company, and that Viceroy is attempting to intervene in that action on the basis of its

purported ownership of Ness Israel.[10]

Conclusions of Law:

        In light of the foregoing findings of fact and the principles of law governing preliminary

---

[10]In their initial brief in opposition to Alpha Capital's preliminary injunction motion, Defendants suggested this
Court should abstain from exercising jurisdiction over this action because of the pending Israeli action; they argued the
doctrine of international abstention is applicable in these circumstances.  The Court declines to apply the doctrine.  Based
on the evidence at the hearing and the parties' arguments, the issues in the Israeli action appear to differ from those in
this case.  Furthermore, Defendants in this action are not currently parties in the Israeli action, and counsel in this case
appear to disagree regarding the precise status of the Israeli proceedings.  The Court finds that abstention is not
appropriate under these circumstances.  *See, e.g., Hoco Drilling LLC v. Norwood Resources, Ltd.*, 2009 WL 1457751
(W. D. Okla. May 21, 2009) (unpublished opinion) (citing *Turner Entertainment Co. v. Degeto Film GmbH*, 25 F. 3d
1512 (11th Cir. 1994)).

injunctions, the Court makes the following conclusions of law:

The parties do not dispute that this Court has jurisdiction over the subject matter of this action pursuant to 28 U. S. C. § 1332, and that it has jurisdiction over the parties.

Alpha Capital's motion seeks a preliminary injunction to preserve the status quo with regard to assertions of ownership of the stock of Ness Israel until the Court can determine the issue of ownership in connection with the final adjudication of Alpha Capital's claim, and Viceroy's counterclaim, for declaratory relief.

The status quo is the "last peaceable uncontested status existing between the parties before the dispute developed." *See Schrier v. University of Colorado*, 427 F. 3d 1253, 1260 (10th Cir. 2005)(internal quotations omitted). In this case, the last "peaceable uncontested status" between these parties was prior to the competing claims of OKT or Viceroy to ownership of the Ness Israel stock; at that time, Alpha Capital was recognized as the owner of the stock.

With respect to the factors required to warrant issuance of a preliminary injunction, the Court concludes that the "modified" standard for preliminary injunctive relief is applicable to this case.

Under that standard, the burden of showing a likelihood of success on the merits is modified if the plaintiff shows that the factors of irreparable harm, balancing of hardships, and the public interest tip strongly in its favor; if so, the movant may satisfy the  likelihood of success on the merits factor by showing "that questions going to the merits are so serious, substantial, difficult, and doubtful as to make the issue ripe for litigation and deserving of more deliberate investigation." *Davis v. Mineta*, 302 F. 3d 1104, 1111 (10th Cir. 2002).

Alpha Capital has demonstrated that irreparable harm will likely result if preliminary

injunctive relief is not granted, as loss of control of a corporation by a majority stockholder or the right to participate in the management of a company constitutes irreparable harm which cannot readily be remedied by an award of damages.  *Int'l Equity Investments, Inc. v. Opportunity Equity Partners, Ltd.,* 441 F. Supp. 2d 552, 563 (S. D. N. Y. 2006); *Davis v. Rondina,* 741 F. Supp. 1115, 1125 ( S. D. N. Y. 1990); *Danaher Corp. v. Chicago Pneumatic Tool Co.*, 1986 WL 7001, at *14 ( S. D. N. Y. June 19, 1986) (unpublished opinion).  A "controlling interest in a corporation is also an important and unique interest," the loss of which cannot be readily compensated by a damages award.  *Beztak Co. v. Bank One Columbus, N. A.,* 811 F. Supp. 274, 284 (E. D. Mich. 1992)(citing *United Acquisitions Corp. v. Banque Paribas*, 631 F. Supp. 797 (S. D. N. Y. 2985)).

The specific circumstances of the facts presented determine whether such prospective loss is too remote or speculative to constitute irreparable harm.  *Beztak*, 811 F. Supp. at 284.   In this case, Alpha Capital has demonstrated that the loss it articulates is not remote or speculative, as the competing claims to ownership of Ness Israel and the challenges to Alpha Capital's right to ownership and control are clearly established by  Defendants' contentions and the evidence in this case.

In contrast, Defendants have not presented evidence to show that they will suffer harm if the preliminary injunction is granted.  Defendants' main assertion of harm is their argument that, if Alpha Capital ultimately is determined to own 100 percent of Ness Israel's stock, it will receive a financial benefit exceeding the value of the Judgment against Ness International; this is based on the evidence that, although the value of Ness Israel was far less than the Judgment at the time of the execution of the Affirmation of Loss,  the parties now agree its current value is significantly greater than the Judgment amount.  That argument does not establish harm to Defendants if preliminary

16

injunctive relief is granted.  The possibility of an ultimate inequitable benefit to Alpha Capital in the event it finally prevails can certainly be addressed by the Court in connection with any final adjudication of the parties' equitable claims.[11]  Accordingly, the Court concludes that Alpha Capital has established irreparable harm and that the balance of hardship tips decidedly in its favor.

With respect to the impact of a preliminary injunction on the public interest, the parties have not devoted significant argument to this factor.  Alpha Capital suggests that there is a public interest in adjudicating the ownership of a corporation as well as avoiding interference with the Court's ability to determine the correct ownership at the conclusion of the litigation.  The Court finds no evidence that issuing a preliminary injunction would be detrimental to the public interest; thus, this factor does not preclude injunctive relief.

Having concluded that Alpha Capital has satisfied the foregoing factors, the Court also concludes that the likelihood of success on the merits factor is properly modified because Alpha Capital has established that this case presents questions going to the merits which are serious, substantial and difficult, and are deserving of more deliberate investigation.  *See Davis*, 302 F. 3d at 1111.

Defendants have challenged the procedural propriety of the New York court's order directing transfer of the stock to Alpha Capital, contending that Alpha Capital was required to follow the execution procedures, including transfer of the Ness Israel stock to a sheriff for sale, in order to

---

[11]The parties have invoked the equity jurisdiction of the Court.  The essence of such jurisdiction has long been recognized as the power "'to do equity and mould each decree to the necessities of the particular case.'"  *Blood v. Fleming*, 161 F.2d 292 (10th Cir. 1947)(quoting *Hecht Co. v. Bowles*, 321 U.S. 321, 329 (1944)).  The Court has at its disposal "all the inherent equitable powers of the District Court" for the proper and complete exercise of its jurisdiction. *Mitchell v. Robert DeMarco Jewelry, Inc.,* 361 U.S. 288, 291 (1960).  The Court may apply flexible powers "as might be necessary to the right administration of justice between the parties." *Grupo Medicago de Desirously, S.A. v. Alliance Bond Fund, Inc.,* 527 U.S. 308, 336 (1999).  The instant case may well require a flexible approach so as to adapt a particular remedy to effect complete justice between the parties.

satisfy its Judgment.  *See* Article 52, New York Civil Practice Law and Rules § 5225(a).

Defendants contend that, because the New York execution procedures were not satisfied, Alpha Capital cannot claim ownership of the stock as a result of the New York court order. Defendants further argue that Alpha Capital cannot lawfully retain the stock as a means of satisfying or partially satisfying the Judgment.  Alpha Capital contends that the New York court was authorized to direct the transfer as a means of partially satisfying the Judgment, and was not required to apply the execution procedures set forth in the New York state law.

This dispute reflects that the ultimate determination of the rights to ownership of Ness Israel stock may require application of New York law as well as the Federal Rules of Civil Procedure. Furthermore, the parties have submitted limited case law addressing this issue, and it cannot be readily determined at this stage of the proceedings.  Significantly, Defendants have pointed the Court to no authority which establishes a time limit for compliance with the New York state procedure, or mandates a forfeiture based on delay.  The Court concludes that this issue presents a serious and substantial question requiring further investigation.

The evidence before the Court regarding Viceroy's claims to ownership of the Ness Israel stock further complicates the issues.  The parties presented a significant number of exhibits, including numerous documents reflecting purported transfers of stock over several years culminating in the alleged ownership by Viceroy.  While the Court tends to view the evidence on which Viceroy relies to support it's ownership claim with skepticism, the Court cannot make a determination in that regard at this early stage.  At a minimum, Viceroy's claim complicates the issue of ownership and further supports application of the modified standards governing preliminary injunctive relief.

Accordingly, the Court concludes that, under the modified standards governing preliminary

18

injunctive relief, Alpha Capital has satisfied its burden of showing a right to such relief.   A preliminary injunction will be granted as set forth herein.

B.  Motion for "Preliminary Declaratory Relief:"

　　　In addition to requesting a preliminary injunction, Alpha Capital asks the Court to grant "preliminary declaratory relief" by concluding that it is the owner of Ness Israel's stock.  In support of this request, Alpha Capital cites limited authority and concedes that some courts have questioned whether such relief is available.  The Court has reviewed the authorities cited by Alpha Capital and finds they do not support a grant of preliminary declaratory relief under the facts of this case; having conducted further research, the Court finds the propriety of such relief in any case is, at best, questionable.

　　　In *Merrill Lynch, Pierce, Fenner & Smith v. Doe*, 868 F. Supp. 532 ( S. D. N. Y. 1994), cited by Alpha Capital, the court granted the plaintiff's request for relief which was described as "preliminary declaratory relief."  The action resulted from a dispute between Merrill Lynch and a former financial consultant; Merrill Lynch claimed that, after his employment was terminated, the consultant violated his employment agreement by soliciting Merrill Lynch clients, and he possessed Merrill Lynch's confidential client information.  The consultant denied his agreement restricted his ability to solicit Merrill Lynch clients, and denied he possessed confidential information.  The dispute was submitted for arbitration.  While arbitration was pending, the consultant filed a state court action and sought a temporary restraining order prohibiting Merrill Lynch from seeking relief in federal court pending the outcome of the arbitration proceeding.  However, Merrill Lynch had, in the interim, filed a federal action seeking an injunction prohibiting the consultant's use of confidential information while the arbitration was pending.  Merrill Lynch then asked the federal

19

court to issue an order declaring that its right to seek federal injunctive relief could not be restrained by a state court. *Id.* at 533-34.

The federal court characterized Merrill Lynch's requested order as one seeking "preliminary declaratory relief," and found that some courts had allowed such relief, while others disagreed. Relying on the established rule that a state court lacks power to enjoin federal court proceedings, the court concluded the consultant's state court action was designed to accomplish that result. *Id.* at 536-37 (citations omitted). The federal court concluded that it was appropriate to issue an order granting temporary declaratory relief stating that Merrill Lynch had the right to seek injunctive relief which would, while the arbitration was pending, protect it from alleged misappropriation of its confidential customer information.

Alpha Capital also cites *Disabled in Action of Pennsylvania v. Southeastern Pennsylvania Transportation Authority,* 539 F. 3d 199, 215 (3d Cir. 2008), in which the plaintiffs sought to enjoin completion of modifications to subway stations, arguing the project failed to comply with the Americans with Disabilities Act ("ADA") requirements for disability access. In addressing the claims, the court observed that, in advance of the project's commencement, the defendant could have sought a legal ruling in the form of a declaratory judgment that the planned project complied with the ADA, and noted that such action could have avoided the expense of undertaking projects which were later found to violate the ADA. *Id.* at 216-217. The court was not expressly asked to enter preliminary declaratory relief, but observed that such procedure could be available in the circumstances presented.

As Alpha Capital concedes, other courts have refused requests for preliminary declaratory relief, and some have questioned whether such relief is available: "As to plaintiff's claim for

preliminary declaratory relief, it is not entirely clear that such relief is *ever* available."   *Murray v. New York*, 604 F. Supp. 2d 581, 587 (W. D. N. Y. 2009) (emphasis in original).   *See also Original Great Am. Choc Chip Cookie Co., Inc. v. River Valley Cookies, Ltd.*, 970 F. 2d 273, 276 (7th Cir. 1992) (noting conflicting lower court authority as to whether "there is such a creature" as a preliminary declaratory judgment, and finding it unnecessary to decide the issue).

The Court agrees that the propriety of such relief is questionable.   In any event, those few courts which have allowed preliminary declaratory relief did so in circumstances clearly distinguishable from those presented in this case.   The facts of both *Merrill Lynch* and *Disabled in Action* are distinguishable from those in this case, and the Court finds neither decision persuasive. Alpha Capital seeks a preliminary ruling that it is the owner of 100 percent of the stock of Ness Israel.   That is the ultimate issue for determination in its request for declaratory relief, and a preliminary ruling in its favor would grant it full relief on that issue.   Given the conflicting claims to ownership asserted in this action, that issue is not properly determined at this stage of the proceedings.

Accordingly, even if this Court were to recognize the availability of the relief requested by Alpha Capital, it would not be appropriate in this case.   The request for "preliminary declaratory relief" is denied.


**ORDER**

It is therefore ordered, adjudged, and decreed that Plaintiff's Motion for Preliminary Injunctive and Declaratory Relief [Doc. No. 13] is granted in part and denied in part as set forth herein.

21

Defendants are hereby preliminarily enjoined from holding out Ness Energy, OKT, or Viceroy as the owner of Ness Israel.  This preliminary injunction applies to Defendants and their agents, employees, and others acting on behalf of Defendants.  This preliminary injunction shall remain in full force and effect until this action can be determined on the merits, or until further order of the Court.

Pursuant to Fed.R.Civ.P. 65(c), the Court finds that security in the amount of $25,000.00 is sufficient, and shall be posted by Plaintiff forthwith.

IT IS SO ORDERED this 24th day of January, 2011.

_____
TIMOTHY D. DeGIUSTI
UNITED STATES DISTRICT JUDGE