## IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF OKLAHOMA

ALPHA CAPITAL ANSTALT, a )
  Liechtenstein corporation, )
                         )
        Plaintiff, )
                         )
v. )   NO. CIV-10-1218-D
                         )
NESS ENERGY INTERNATIONAL, INC., a )
  Washington corporation,  et al., )
                         )
        Defendants. )

## ORDER

Before the Court is the Motion of Plaintiff Alpha Capital Anstalt ("Alpha Capital") for Partial Summary Judgment [Doc. No. 77].   Alpha Capital seeks judgment on its claim for a declaratory judgment that it is the owner of the stock of Ness Energy of Israel, Inc. ("Ness Israel") and its request that the defendants be permanently enjoined from asserting claims to ownership of the Ness Israel stock.[1]  Alpha Capital also seeks judgment on the counterclaim of Defendant Viceroy, LLC ("Viceroy") in which Viceroy asserts it is the valid owner of Ness Israel. Defendants timely responded to the motion, and Alpha Capital filed a reply.

Background:

In this action, Alpha Capital contends it acquired all of the stock of Ness Israel as a result of a May 29, 2008 order of the United States District Court for the Southern District of New York (the

---

[1]Alpha Capital also asserts claims of intentional interference with its contractual or business relationships and a civil conspiracy by defendants to deprive Alpha Capital of its ownership of Ness Israel.  Alpha Capital does not seek judgment on those claims, and its requests for declaratory and permanent injunctive relief do not require consideration of those claims.  Accordingly,  they are not addressed herein.

"New York court") directing that Ness Energy International, Inc. ("Ness International")[2] convey the Ness Israel stock to Alpha Capital in partial satisfaction of a January 18, 2008 default judgment entered in favor of Alpha Capital and against Ness International by the New York court.   In compliance with the New York court's order, Ness International's chief executive officer, Alan Stricklin ("Stricklin"), filed an August 19, 2008 "Affirmation of Loss" in the New York action, representing to the New York court that Ness International owned all of the stock of Ness Israel, although the Ness Israel stock certificates could not be located.  Stricklin stated Ness International was conveying the Ness Israel stock to Alpha Capital in partial satisfaction of the judgment owed to it by Ness International; he expressly acknowledged Ness International was conveying to Alpha Capital  ownership of the Ness Israel stock and the attendant rights of ownership, and stated the certificates would be delivered to Alpha Capital as soon as they were found.

Alpha Capital alleges that, later in 2008 and in 2010, it learned of competing claims to the ownership of Ness Israel's stock.   In 2008, Alpha Capital was notified that Defendant OKT Resources, LLC ("OKT") claimed ownership of 100 per cent of Ness Israel's stock as a result of a November 13, 2008 sale to OKT by Ness International.  Alpha Capital alleges that it notified OKT's general manager, Defendant David Boyce ("Boyce"), of its Ness Israel ownership and provided him with documents evidencing the New York court orders and the Affirmation of Loss.  According to Alpha Capital, Boyce then acknowledged that the November 13, 2008 purported sale to OKT was unauthorized and that Ness International had previously conveyed the Ness Israel stock to Alpha Capital.

---

[2]In the testimony and the documents submitted, the parties have referred to Ness Energy International, Inc. as Ness Energy, Ness International, or the "public company."  The Court will refer to it as Ness International in this Order.

In their Answers[3] to the Complaint, all defendants deny that Alpha Capital is the owner of Ness Israel's stock. They contend the August 19, 2008 stock transfer was invalid because Ness International did not own the stock at the time. Alternatively, they contend the transfer was invalid because Alpha Capital did not comply with New York law regarding the transfer of property in satisfaction of a judgment, and it failed to register the stock certificates as required by Texas law.[4]

Alpha Capital sought a preliminary injunction prohibiting Defendants from asserting that Ness International, OKT or Viceroy own the stock of Ness Israel. It also sought preliminary declaratory relief, asking the Court to conclude that Alpha Capital is the valid owner of Ness Israel's stock. The Court conducted a hearing on the motion and, on January 24, 2011, the Court issued its Findings of Fact, Conclusions of Law and Order [Doc. No. 54] ("Preliminary Injunction Order"). The Court concluded that Alpha Capital was entitled to a preliminary injunction enjoining Defendants from holding out Ness International, OKT, or Viceroy as the owner of Ness Israel. The Court declined to issue preliminary declaratory relief.

Following the issuance of the Preliminary Injunction Order, the parties engaged in additional discovery. Alpha Capital now asks the Court to grant it summary judgment on its claim for declaratory relief by ruling that the undisputed material facts in evidence establish it is the owner of Ness Israel; it also seeks judgment on Viceroy's counterclaim asserting that Viceroy owns Ness Israel. It thus seeks a judgment declaring it is the sole owner of Ness Israel, and it also seeks a permanent injunction prohibiting Defendants from asserting ownership rights to Ness Israel.

---

[3]Defendants initially filed separate answers to the Complaint, but subsequently obtained leave of Court to file a joint amended answer after the Court ruled on the motion for preliminary injunction. Alpha Capital has filed a separate motion to strike affirmative defenses asserted in the amended answer. That motion will be addressed in a separate order.

[4]Ness International was organized under the laws of Texas.

<u>Summary judgment standards:</u>

Summary judgment shall be granted where the undisputed material facts establish that one party is entitled to judgment as a matter of law.  Fed.R.Civ.P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  A material fact is one which may affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).  "[T]he requirement that a dispute be 'genuine' means simply that there must be more than 'some metaphysical doubt as to the material facts.'" *Anderson*, 477 U.S.  at  260-261(quoting *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). To avoid summary judgment, the non-moving party must present more than a "mere scintilla" of evidence; the evidence must be such that "a reasonable jury could return a verdict for the non-moving party." *Id.*   The facts in the record and reasonable inferences therefrom must be viewed in the light most favorable to the non-moving party. *Swackhammer v. Sprint/United Mgmt. Co.*, 493 F.3d 1160, 1167 (10th Cir. 2007); *MacKenzie v. City & County of Denver*, 414 F.3d 1266, 1273 (10th Cir. 2005).

"The purpose of a summary judgment motion is to assess whether a trial is necessary." *Berry v. T-Mobile USA, Inc.,* 490 F. 3d 1211, 1216 (10th Cir. 2007) (citing *White v. York Int'l Corp.*, 45 F.3d 357, 360 (10th Cir.1995)).  The party opposing summary judgment cannot rely on personal beliefs or conclusory assertions, but must come forward with evidence outside the pleadings sufficient to create a factual dispute with regard to the issue on which judgment is sought. Fed.R.Civ.P. 56(c); *Celotex*, 477 U.S. at 324; *Harvey Barnett, Inc. v. Shidler*, 338 F.3d 1125, 1136 (10th Cir. 2003).  The evidence must "go beyond the pleadings and 'set forth specific facts' that would be admissible in evidence in the event of trial." *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664,

4

671 (10th Cir. 1998).  The facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein.  *Id.* (citing *Thomas v. Wichita Coca-Cola Bottling Co.*, 968 F.2d 1022, 1024 (10th Cir.1992), *cert. denied,* 506 U.S. 1013 (1992)).

The record before the Court:

The record before the Court reflects that certain facts are not disputed by the parties.[5]   The parties agree that Alpha Capital is a Liechtenstein corporation with its principal place of business in Balzers, Liechtenstein.   Ness Energy is a Washington corporation having its principal place of business in Edmond, Oklahoma.   Defendants  OKT Resources and Viceroy are both Oklahoma limited liability companies having their  principal places of business in Edmond, Oklahoma.  Boyce is a citizen of Oklahoma and is currently the president and chief executive officer of Ness International; he is also currently the manager and part owner of both OKT Resources and Viceroy. OKT Resources is an oil and gas exploration and production company which operates in Oklahoma and other states.   Viceroy was formed by Boyce as a holding company for the purpose of attempting to "clean up and restore" Ness International as a viable company.

On or about January 18, 2008, a default judgment in the amount of $545,035.30 (the "Judgment") was entered in favor of Alpha Capital and against Ness International in *Alpha Capital Anstalt vs. Ness Energy International, Inc.*, Case No. 07 Civ. 9242 (AKH), United States District Court, Southern District of New York.   On or about May 29, 2008, the New York court entered an Order directing Ness International to deliver to Alpha's attorneys the stock certificates representing

---

[5]Defendants' response to the motion identifies several statements which they contend are in dispute.  However, as discussed in this Order, some of Defendants' arguments rely on disputed facts which are not material to the issues, assert contentions which are not   supported by the evidence, or reassert arguments rejected by the Court in the Preliminary Injunction Order.

Ness International's entire ownership interest in Ness Israel in partial satisfaction of the Judgment.[6] Ness International was directed to deliver the stock certificates within two weeks of its receipt of the May 29, 2008 Order.  It is not disputed that, at the time, Alan Stricklin was the President and Chief Executive Officer ("CEO") of Ness International.

On or about August 19, 2008, in his capacity as President and CEO of Ness International, Stricklin executed an "Affirmation of Loss" in which he acknowledged receipt of the New York court's May 29, 2008 Order directing transfer of the Ness Israel stock certificates to Alpha Capital. A copy is submitted as Alpha Capital Exhibit 13.  In the Affirmation of Loss, Stricklin expressly represented that Ness International "is the owner of the Stock Certificates representing 100% of the ownership interest in Ness Israel."  *Id.* ¶ 3.  The Affirmation of Loss states that Ness International "hereby transfers to Alpha Capital Anstalt said Stock Certificates and all of Ness' right, title and interest in Ness Israel, including, but not limited to, the right to vote said shares."  Alpha Capital Ex. 13  ¶ 3.  Stricklin also stated he was unable to locate the Ness Israel stock certificates, but that the same would be delivered to Alpha Capital as soon as they were found.  *Id.* at ¶ 2.

There is no evidence that Stricklin or anyone else filed any pleading or motion in the New York litigation to challenge that court's issuance of the May 29, 2008 Order.  Nor is there evidence that any of the defendants to this action returned to the New York court to challenge the validity of that order or seek modification or alteration of the May 29, 2008 Order.

The parties agree that, at the time Stricklin executed the Affirmation of Loss and transferred the stock of Ness Israel to Alpha Capital, the value of the Ness Israel stock was substantially less

---

[6]Although the Order does not contain the phrase "partial satisfaction," the memorandum submitted to the New York court  by Alpha Capital expressly stated the stock conveyance was requested as "partial satisfaction" of that judgment.  Alpha Capital Ex. 10, at p. 30.  Defendants submit no evidence to the contrary.

than the amount of Alpha Capital's $545,035.30 Judgment against Ness International.  The record reflects that Alpha Capital attempted to find a buyer for the Ness Israel stock,  could not do so, and concluded there was no market for the stock.  The parties agree, however, that the current value of Ness Israel's stock exceeds the amount of the Judgment.[7]

In opposing the summary judgment motion, Defendants repeat the arguments asserted in opposition to Alpha Capital's motion for a preliminary injunction.  They first argue that the Ness Israel stock was never lawfully transferred to Alpha Capital because it was not owned by Ness International at the time of the August 19, 2008 transfer.  Next, Defendants argue that, even if Ness International was the owner at that time, the transfer is invalid because Alpha Capital failed to comply with New York statutes governing execution of judgments.  Furthermore, Defendants contend that Alpha Capital failed to register the stock according to Texas law.

Defendants' first argument is based on the contention that Ness Israel's stock was owned by Sha Stephens, to whom it was allegedly issued when Ness Israel was formed in 2003, and that Ness International never owned the Ness Israel stock.  Defendants also contend that Ness Israel was not a subsidiary of Ness International.

Defendants' argument is not supported by the evidence before the Court.  Initially, as the Court found in its ruling on Alpha Capital's request for a preliminary injunction, the only evidence supporting Defendants' contention is the testimony of Boyce.  It is not disputed that Boyce became CEO of Ness International in mid-2009, after he learned in December of 2008 that Stricklin had conveyed the stock of Ness Israel to Alpha Capital in August 2008.  Prior to learning of the August 2008 conveyance to Alpha Capital, Boyce had paid $10,000 to Stricklin personally via a November

---

[7]The evidence of record does not reflect a current dollar value for the stock.

13, 2008 transaction in which Stricklin purported to sell to Boyce ownership of Ness Israel and other assets of Ness International. When Boyce learned of the August 2008 conveyance to Alpha Capital, however, he sent all Ness Israel documents in his possession to Alpha Capital and acknowledged to Joseph Hammer that Alpha Capital had the superior claim to ownership of Ness Israel. After communicating with contacts in Israel, however, Boyce renewed his interest in Ness Israel, and he began investigating the history of its ownership. He contacted the attorney who had assisted in the incorporation of Ness Israel, Craig Towson, and obtained documents from Mr. Towson, including *unsigned* copies of the corporate formation papers. Towson testified in a deposition that, although he prepared the papers, he never witnessed the documents being signed, did not maintain copies of signed documents, and had no further involvement with Ness Israel after preparing the initial documents. Based on his review of these unexecuted documents, Boyce decided the initial intent was that Sha Stephens would be the president, sole director, and sole shareholder of Ness Israel. Boyce then completed the blank forms prepared by Towson to reflect that Sha Stephens was the sole shareholder of Ness Israel, back-dated them to show a 2003 date, and asked Stephens to execute all Ness Israel corporate documents with effective dates roughly contemporaneous with the date of the formation of Ness Israel. Mr. Stephens signed these, and Boyce then created, and had Stephens execute, a stock certificate bearing the date of September 2, 2003 on its face, but assigned by Stephens to Viceroy on May 27, 2010, as indicated on the reverse side of the certificate.

Stephens admitted in his deposition that he recalled the formation of Ness Israel, but he had no recollection of executing any corporate documents or receiving a stock certificate at the time it was formed. Furthermore, he testified that he had no such recollection at any time prior to Boyce presenting those documents to him in 2010. He testified that his current belief that he once owned

8

Ness Israel is based solely on Boyce's 2010 representations to him that he initially owned the stock. Stephens Dep., Alpha Capital Reply Ex. 13, p. 70, lines 15-23; p. 71, lines 1-2.

Defendants rely on the 2010 back-dated Ness Israel documents to support their contention that Ness Israel was never owned by Ness International, and its stock was owned solely by Stephens at the time of the Alpha Capital loan to Ness International and at the time Stricklin executed the Affirmation of Loss stating that Ness International owned Ness Israel's stock. This contention is contrary to the evidence in the record. This issue was addressed at some length during the preliminary injunction hearing, and the Court considered and rejected Defendants' contention in the Preliminary Injunction Order. Although the Court is not bound by the previous findings and conclusions in connection with the preliminary injunction, nothing in the current record calls into question those findings and conclusions on this issue. The evidence reflects not only that Stricklin expressly stated Ness International owned Ness Israel's stock in August of 2008, but that, throughout the time period prior to and following Alpha Capital's loan to Ness International, the public filings of Ness International repeatedly identified Ness Israel as one of its subsidiaries. In fact, the evidence establishes Alpha Capital researched Ness International's public filings prior to making the loan, and those filings consistently listed Ness Israel as a subsidiary. *See* Alpha Capital Reply Exs. 1-12. Other than the May 2010 execution by Stephens of back-dated corporate documents, including the stock certificate, there is no evidence to show that Ness Israel's stock was owned by anyone other than Ness International. Furthermore, Defendants admit the stock certificate executed by Stephens in 2010 was back-dated to 2003, and Boyce testified at the preliminary injunction hearing that he personally inserted the 2003 date on the stock certificate prior to obtaining Stephens's signature.

9

Defendants have offered no evidence that would persuade this Court to alter the findings and conclusions set forth in the Preliminary Injunction Order that Ness International owned the stock of Ness Israel at the time it transferred Ness Israel's stock to Alpha Capital in 2008.  The Court concludes that Defendants cannot effectively dispute Alpha Capital's ownership of the Ness Israel stock on this basis.  The dispute they attempt to create regarding the stock ownership at the relevant time is not supported by the evidence.

Defendants argue, however, that even if Ness International owned Ness Israel at the time of the August 19, 2008 Affirmation of Loss, Alpha Capital's claim to ownership of the stock is invalid because Alpha Capital did not obtain a stock certificate as required by Article 8 of the Uniform Commercial Code, adopted in Texas as the Texas Business and Commercial Code.  Defendants contend legal ownership was never effected because there was no delivery to Alpha Capital of a Ness Israel stock certificate, and because no replacement stock certificate was obtained as required by Texas law.  *See* Tex. Bus. & Comm. Code § 8.303(a) and (b) § 8.405.

As Alpha Capital points out, however, Texas does not require possession of a stock certificate to evidence ownership of a corporation.  *In re Seminole Walls & Ceilings Corp.,* 446 B. R. 572, 585-86 (M.D. Fla. 2011) (applying Texas law).  "Texas has adopted Article 8 of the Uniform Commercial Code, which governs the creation and transfer of corporate securities.  Article 8 does not require a stock certificate to prove ownership in a company." *Id.*  Furthermore, "stock ownership 'may, and often does, exist without' evidence of a certificate." *Id.*   As the *Seminole Walls* Court noted, "in order to create a stockholder relationship, a party must show an agreement giving the shareholder the ability to exercise a shareholder's rights.  Courts often imply such agreements or contracts from the parties' acts and the surrounding circumstances." *Seminole Walls,* 446 B.R. at

10

586.   Under Texas law, the absence of a stock certificate thus does not invalidate Alpha Capital's ownership of Ness Israel's stock because stock ownership does not require possession of a stock certificate.  *In re Estate of Crawford,* 795 S. W. 2d 835, 838 (Tex. App. 1990) (citing Tex. Bus. & Comm. Code §8.102).  "Possession of a share certificate is not essential to ownership of shares or to the exercise of shareholder's rights."  11 *Fletcher Cyclopedia of the Law of Corporations* § 5094 (2010); *see also Estate of Bridges v. Mosebrook*, 662 S. W. 2d 116, 120 (Tex. App. 1983).   As the Court in *Seminole Walls* noted:

> [c]omplete ownership of a stock may exist without the issuance of a certificate or its delivery, and a shareholder can transfer shares without signing, endorsing, or delivering stock certificates, and without memorializing the transfer in the corporation's records.  Instead, parties can transfer stock without the formalities of endorsement and delivery if they clearly intend that the transfer take place.

*Seminole Walls* , 446 B. R. at 586.  In this case, the Affirmation of Loss executed by Stricklin clearly evidences the intent of Ness International, which he then served as CEO, to transfer all of the Ness Israel stock to Alpha Capital:

> Ness [International] represents that it is the owner of the Stock Certificates representing 100% of the ownership interest in Ness Israel.  Ness hereby transfers to Alpha Capital said Stock Certificates and all of Ness' right, title and interest n Ness Israel, including, but not limited to, the right to vote said shares.

Affirmation of Loss, Alpha Capital Ex. 59.

Accordingly, under the undisputed facts in evidence and Texas law, the fact that Alpha Capital did not receive a stock certificate or certificates when Ness International transferred Ness Israel's stock does not render the transfer of ownership invalid.  Defendants' attempt to create a material fact dispute on this issue is not supported by the evidence.

Defendants also contend, however, that Alpha Capital cannot be deemed the valid owner of

Ness Israel's stock because it did not seek a replacement stock certificate as authorized by Texas law. As Alpha Capital points out, however, while Texas law authorizes the issuance of a replacement stock certificate, neither the statute nor any decision cited by the parties *required* it to do so.  The Texas Business and Commercial Code allows the owner of a certificated security to obtain a new certificate if the certificate was lost, destroyed, or wrongfully taken.  Tex. Bus. & Comm. Code §8.405.  Nothing in the language of that statute or any authority cited by Defendants supports their contention that Alpha Capital was required to obtain a replacement stock certificate in order to validly receive ownership of Ness Israel's stock.

Defendants also argue, however, that the Affirmation of Loss could not have validly transferred the stock of Ness Israel to Alpha Capital because Alpha Capital did not execute on its Judgment in accordance with New York law.  Despite the undisputed evidence that the Affirmation of Loss expressly states Ness International was conveying Ness Israel's stock to Alpha Capital "[i]n partial payment of the amounts owed by Ness [International] to Alpha" as a result of the Judgment, Stricklin now denies that he intended to transfer the stock as a means of partially satisfying the Judgment.  Stricklin dep., Defendants' Ex. B, p. 40.   Defendants argue that, contrary to Alpha Capital's representation, Stricklin never reached an agreement in settlement of the Judgment claim because Stricklin testified that he and Alpha Capital could not agree regarding the dollar value that could be attributed to Ness Israel's stock.  *Id.*   Thus, Defendants contend the May 29, 2008 New York court order requiring Ness International to transfer the stock was based on an inaccurate representation by Alpha Capital that the parties had reached a verbal agreement that Ness Israel's stock would be transferred in partial satisfaction of the Judgment.

Although Defendants now assert that contention, there is no evidence that Stricklin or any

12

Defendant in this case ever challenged Alpha Capital's alleged representation to the New York court or the validity of the New York court's order directing Ness International to convey the stock.   In fact, Defendants never challenged the validity of the order until this lawsuit was filed.   As Alpha Capital correctly argues, a challenge to the validity of the New York court's order or the Judgment must be filed in that court, in accordance with Fed. R. Civ. P.  60(b).  "Relief under Rule 60(b) ordinarily is obtained by motion in the court that rendered the judgment."  11 Charles Alan Wright et al., *Federal Practice and Procedure* § 2865 (2d ed. 1995).  The record is devoid of any evidence that Defendants or anyone acting on behalf of Ness International sought relief under Rule 60(b) with the New York court, nor is there any evidence that Defendants sought any other relief from the Judgment or subsequent order from the New York court.

Finally, Defendants contend Alpha Capital cannot be the owner of Ness Israel's stock because it did not properly execute on the Judgment according to New York's statutory procedures for execution of a judgment.   Alpha Capital contends that New York law permits the procedure which was followed by the New York court.

As the parties agree, Fed. R. Civ. P. 69 provides that a money judgment "is enforced by a writ of execution, unless the court directs otherwise.  The procedure on execution–and in proceedings supplementary to and in aid of judgment or execution–must accord with the procedure of the state where the court is located, but a federal statute governs to the extent it applies."   Alpha Capital argues that, in this case, the New York court followed Rule 69 because, in lieu of execution, it "directed otherwise."  It further contends that New York law expressly permits the type of agreement utilized by Alpha Capital and Ness International in this case.  The Practice Commentary to New York Civil Practice Law and Rules ("New York Commentary") provides:

> When the property to be levied on is other than money itself (legal tender), the judgment creditor does not get the property–unless an agreement is reached to that effect between judgment creditor and judgment debtor–but only the money that the property can bring at an execution sale.

New York Commentary § 5201 (emphasis added).  Alpha Capital thus argues that, because the parties agreed that the property consisting of Ness Israel's stock could be conveyed to Alpha Capital, no execution procedure was required.  Furthermore, it argues that a New York judgment creditor *may* avail itself of the execution procedures of New York law, but it is not *required* to do so.  According to the New York Commentary, "[a] money judgment ...may be enforced as prescribed in article fifty-two."  New York Civil Practice Law and Rules § 5101.  New York law provides that, where a judgment creditor becomes aware of a judgment debtor's assets, including "semi-liquid assets," the "judgment creditor can petition the court for a turnover order directing the turnover of that asset to the judgment creditor as partial or complete satisfaction of the judgment."  New York Practice Series: *Enforcing Judgments and Collecting Debts in New York* § 8:5 (2010).  A New York court may "order delivery of the property the debtor controls, whether located within or without the state." *Hotel 71 Mexx Lender LLC v. Falor*, 926 N. E. 2d 1202, 1208 n. 8 (N. Y. 2010).

The Court agrees with Alpha Capital that the validity of Ness International's 2008 transfer to Alpha Capital of the Ness Israel stock is not impacted by New York procedures governing the execution of a judgment.  The record reflects that Ness International owned the stock at the relevant time and that the stock was validly transferred to Alpha Capital in partial satisfaction of the debt undisputedly owed to it by Ness International.  In connection with the preliminary injunction proceedings, the Court's factual determinations support the effectiveness of the 2008 stock transfer.  The parties have subsequently engaged in additional discovery on that and other issues in this

14

lawsuit. However, Defendants have presented no evidence sufficient to create a material fact dispute as to the validity of the 2008 stock transfer to Alpha Capital, nor have they presented persuasive legal argument and authority sufficient to call into question the Court's previous findings and conclusions on this issue as set forth in the Preliminary Injunction Order.

To the extent Alpha Capital seeks judgment as a matter of law on its contention that all of the Ness Israel stock was validly conveyed to it in 2008, its motion is granted. Similarly, to the extent it seeks judgment on its contention that subsequent purported transfers of the Ness Israel stock to OKT and/or Viceroy are invalid as a matter of law, its motion must also be granted because Ness International was no longer the owner of Ness Israel's stock when those transfers were attempted. Thus, Alpha Capital is also entitled to judgment on Viceroy's counterclaim asserting that Viceroy is the owner of Ness Israel's stock. That counterclaim is based only on the 2010 actions of Boyce in back-dating blank certificates and documents in an attempt to show that Sha Stephens had owned Ness Israel since 2003, and allegedly subsequently transferred it to Viceroy. As indicated herein, the evidence does not support that argument. Furthermore, because the Ness Israel stock ownership claims of OKT and Viceroy are based on this same theory, Alpha Capital will ultimately be entitled to permanent injunctive relief preventing those entities from asserting claims to ownership of Ness Israel by virtue of the post-August 2008 attempted transfers by Stephens of Ness Israel's stock. Because Stephens did not own the stock at the time of the attempted transfers, those claims of ownership fail as a matter of law.

To the extent Alpha Capital contends, however, that it is entitled as a matter of law to retain all of Ness Israel's stock, or its value, in an amount exceeding the amount of the New York judgment, its motion must be denied. The evidence undisputedly establishes that the only purpose

of the Ness Israel stock transfer to Alpha Capital by Ness International was to partially satisfy the debt Ness International owed to Alpha Capital as a result of the New York Judgment.   It is also undisputed that, at the time of the 2008 transfer, the value of the Ness Israel stock was less than the amount of the Judgment.   Although the parties now agree that Ness Israel's stock has increased in value and likely exceeds the amount of the Judgment, the record does not establish its current value. Nor is there evidence establishing whether, at some point after 2008, the value of the stock increased to an amount exceeding the Judgment.   Further, it is undisputed that Alpha Capital has never, through legal action in the New York court or otherwise, credited Ness International with any amount of reduction of the Judgment in consideration of its receipt of the Ness Israel stock.

The parties have invoked the equity jurisdiction of the Court.   The essence of such jurisdiction has long been recognized as the power "'to do equity and mould each decree to the necessities of the particular case.'"*Blood v. Fleming*, 161 F.2d 292, 296 (10th Cir. 1947) (quoting *Hecht Co. v. Bowles*, 321 U.S. 321, 329 (1944)). The Court has at its disposal "all the inherent equitable powers of the District Court" for the proper and complete exercise of its jurisdiction. *Mitchell v. Robert DeMario Jewelry, Inc.*, 361 U.S. 288, 291 (1960).   The Court may apply flexible powers "as might be necessary to the right administration of justice between the parties."   *Grupo Mexicano de Desarrollo S.A. v. Alliance Bond Fund, Inc.*, 527 U.S. 308, 336 (1999).   The notion that Alpha Capital can indefinitely retain all of the stock of Ness Israel without ever effectively crediting the value of the stock against the Judgment is both nonsensical and inequitable.   Perhaps one of the most basic maxims of equity is that "one who seeks equity must do equity."   *See, e.g.,* D. Dobbs, *Handbook on the Law of Remedies*, § 2.3(4) n. 7 (2d ed. 1993).   Accordingly, the Court concludes that, to the extent Alpha Capital's motion seeks a ruling that it is entitled as a matter of law to retain

16

the full current value of the Ness Israel stock, the motion must be denied.  As a result, the request

that Ness International be permanently enjoined from asserting any claim to a portion of the stock

or its value must also be denied.  The Court reserves this issue for trial, and will determine at a later

date the order in which the remaining equitable and legal issues will be tried.

Conclusion:

   For the foregoing reasons, Alpha Capital's motion for partial summary judgment [Doc. No.

77] is GRANTED in part and DENIED in part.  The motion is granted to the extent it seeks a ruling

that Ness International owned the stock of Ness Israel in August 2008 and that it lawfully transferred

all of the Ness Israel stock to Alpha Capital by virtue of the August 19, 2008 Affirmation of Loss

and related documents.  The motion is also granted to the extent Alpha Capital seeks a ruling that

Viceroy and OKT Resources have no lawful claim to ownership of the Ness Israel stock by virtue

of purported transfers by Ness International after August 19, 2008; Alpha Capital will ultimately be

entitled to permanent injunctive relief preventing those entities from asserting ownership of said

stock.  To the extent, however, that Alpha Capital seeks a ruling that it is entitled to retain all of the

Ness Israel stock, or its value, even if the stock value exceeds the amount of Alpha Capital's New

York Judgment, the motion must be denied because balancing of the equities between the parties is

required, and such cannot be made based on the current record.  The Preliminary Injunction Order

shall remain in force and effect pending the entry of a final order in this case.

   IT IS SO ORDERED this 28th day of March, 2012.

                  _____

                  TIMOTHY D. DeGIUSTI
                  UNITED STATES DISTRICT JUDGE